## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**It Works Marketing, Inc.,**

       **Plaintiff,**

**v.**                            **CASE NO.**

**Melaleuca Inc., Kimberly Bertolucci a/k/a**
**Kimberly McCauley, Katie Herold,**
**Amber Hoerner, Kellie Kaufman,**
**Jeanie McWhorter, Ashley Olive,**
**Brandon Olive, Lea Piccoli,**
**Sarah Rankin, Joshua Rankin,**
**Makenzie Schultz, Steven Schultz,**
**Geneveve Sykes, and Sean Sykes,**

       **Defendants.**
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, It Works Marketing, Inc. ("It Works!"), sues Defendants, Melaleuca Inc.

("Melaleuca"), and Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Harold, Amber

Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah

Rankin, Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes, and Sean Sykes

(the "Distributor Defendants"), and alleges:

## INTRODUCTION

1.     It Works! is a direct sales company that markets its goods and services, primarily

high-quality health and beauty products, through independent distributors.  It Works! brings this

action against certain former It Works! distributors—the Distributor Defendants—and their

current direct sales company—Defendant Melaleuca, a competitor of It Works!.  Together, the

Distributor Defendants and Melaleuca have orchestrated and are perpetrating an unlawful

scheme to illegally recruit current It Works! distributors, procure the distributors' resignations from It Works!, and have them join Melaleuca to sell its competing products, all in an illicit attempt to sabotage and destroy It Works!.  Specifically, the Distributor Defendants—all of whom had access to and received It Works! confidential, proprietary, and trade secret information during their tenure with It Works!—and Melaleuca have violated and are now violating (i) the non-compete, non-solicitation, and non-disclosure obligations in the Distributor Defendants' agreements with It Works!, (ii) Melaleuca's own policies and procedures, and (iii) federal and state law.  As a result, It Works! seeks injunctive relief to prohibit the Defendants' wrongful conduct and damages arising from that conduct.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff, It Works Marketing, Inc., is a Florida corporation with its principal place of business and headquarters in Palmetto, Manatee County, Florida.  It Works! was founded in 2001, and through its passionate sales force and relentless focus on innovation and quality, has grown to become a global provider of high-quality health and beauty products.

3.      Defendant, Melaleuca Inc., is upon information and belief an Idaho corporation with its principal place of business and headquarters in Idaho Falls, Idaho, and is a competitor of It Works!.

4.      Defendant, Kimberly Bertolucci a/k/a Kimberly McCauley, is upon information and belief a citizen and resident of California.  Ms. McCauley was an It Works! distributor from July 27, 2018 through September 25, 2019.

5.      Defendant, Katie Herold, is upon information and belief a citizen and resident of Ohio.  Ms. Herold became an It Works! distributor on May 21, 2013 and resigned on July 22, 2020.

6.      Defendant, Amber Hoerner, is upon information and belief a citizen and resident of California.  Ms. Hoerner joined It Works! as a distributor on June 1, 2014 and resigned on October 1, 2018.

7.      Defendant, Kellie Kaufman, is upon information and belief a citizen and resident of Washington.  Ms. Kaufman became an It Works! distributor on January 27, 2012 and resigned on April 15, 2020.

8.      Defendant, Jeanie McWhorter, is upon information and belief a citizen and resident of Georgia.  Ms. McWhorter joined It Works! as a distributor on January 11, 2015 and resigned on or about August 29, 2018.

9.      Defendant, Ashley Olive, is upon information and belief a citizen and resident of Texas.  Ms. Olive was an It Works! distributor from June 29, 2014 through August 18, 2018.

10.      Defendant, Brandon Olive, is upon information and belief a citizen and resident of Texas.  Mr. Olive was an It Works! distributor from July 31, 2014 through August 18, 2018.

11.      Defendant, Lea Piccoli, is upon information and belief a citizen and resident of New Jersey.  Ms. Piccoli was an It Works distributor from September 7, 2014 through July 23, 2020.

12.      Defendant, Sarah Rankin, is upon information and belief a citizen and resident of Florida.  Ms. Rankin joined It Works! as a distributor on July 8, 2010 and resigned on July 21, 2020.

13.      Defendant, Joshua Rankin, is upon information and belief a citizen and resident of Florida.  Mr. Rankin joined It Works! as a distributor on July 18, 2010 and resigned on July 21, 2020.

14.     Defendant, Makenzie Schultz, is upon information and belief a citizen and resident of Iowa.  Ms. Schultz was an It Works! distributor from April 2, 2013 through August 18, 2018.

15.     Defendant, Steven Schultz, is upon information and belief a citizen and resident of Iowa.  Mr. Schultz was an It Works! distributor from May 5, 2013 through August 18, 2018.

16.     Defendant, Geneveve Sykes, is upon information and belief a citizen and resident of Florida.  Ms. Sykes became an It Works! distributor on October 14, 2014 and resigned on November 27, 2018.

17.     Defendant, Sean Sykes, is upon information and belief a citizen and resident of Florida. Mr. Sykes became an It Works! distributor on May 3, 2016 and resigned on November 27, 2018.

18.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including The Lanham Act, 15 U.S.C. § 1051 *et seq*., and The Defend Trade Secrets Act 18 U.S.C. § 1836 *et seq.,* and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims in this action because they are so related to the claims over which the Court has original jurisdiction that they form part of the same case or controversy.

19.     The Court has personal jurisdiction over the Distributor Defendants because, in Section 14 of the It Works! Distributor Agreement Terms & Conditions (described below), they have submitted themselves to the jurisdiction of this Court, and has personal jurisdiction over all of the Defendants pursuant to Section 48.193, Florida Statutes.

20.     The Defendants, among other things:

(a)     operate, conduct, engage in, or carry on a business or business venture in this

state, including having an office or agency in Florida;

(b)     committed and continue to commit tortious acts within Florida;

(c)     caused and continue to cause injury to persons or property within this state arising

out of an act or omission by the Defendants outside this state, while

(i)     the Defendants were engaged in solicitation or service activities within

Florida; or

(ii)     products, materials, or things processed, serviced, or manufactured by the

Defendants were used or consumed within Florida in the ordinary course of commerce,

trade, or use;

(d)     breached and continue to breach a contract in Florida by failing to perform acts

required by the contract to be performed in this state; and

(e)     have engaged in substantial and not isolated activity within Florida, whether

wholly interstate, intrastate, or otherwise.

21.     The Distributor Defendants electronically signed every agreement between It

Works! and the Distributor Defendants that are a subject of this Complaint.  The Distributor

Defendants who are not citizens and residents of Florida made visits to It Works! headquarters in

Florida and / or to It Works! meetings and events in Florida in connection with their business

activities with It Works!.  The Distributor Defendants also regularly and routinely made

telephone calls and transmitted electronic messages and other communications to It Works! in

Florida.

22.     The Distributor Defendants received substantial economic benefits from their

business activities with It Works! in Florida, and Melaleuca has received substantial economic

benefits from its business activities with certain Distributor Defendants in Florida and otherwise from its business activities in Florida.

23.    Melaleuca and the Distributor Defendants have caused and continue to cause It Works! substantial harm and economic damages in Florida as discussed in this Complaint.

24.    Venue is proper in this district as to the Distributor Defendants because, in Section 14 of the It Works! Distributor Agreement Terms & Conditions (described below), they agreed to venue in this district, and venue is proper in this district as to all of the Defendants pursuant to 28 U.S.C. § 1391.

25.    All conditions precedent to this action have occurred, have been satisfied, or are waived.

26.    It Works! has retained the law firm Shumaker, Loop & Kendrick, LLP and is obligated to pay reasonable attorneys' fees and costs for its services in this matter.

## BACKGROUND

### The It Works! Distributor Agreement

27.    As a requirement to become an It Works! distributor, each of the Distributor Defendants entered into a contract with It Works! that includes the It Works! Distributor Agreement (Terms and Conditions), the It Works! Policies and Procedures, and the It Works! Compensation Plan (collectively the "Agreement") which defines and governs the relationship between It Works! and its distributors.  A copy of the Agreement is attached as Exhibit 1.

28.    It Works distributors are required to electronically review, acknowledge, and consent to the  Agreement as part of becoming a distributor.  Additionally, each time there is a substantive update to the Agreement, It Works distributors undergo a "force read" where the distributors are again required to review, acknowledge, and consent to the terms of the

Agreement.  Each of the Distributor Defendants in this case did, in fact, electronically acknowledge and consent to the Agreement.

29.    The term of the Agreement is one year, and each of the Distributor Defendants renewed their Agreement with It Works! annually during their tenures as It Works! distributors. *See* Exhibit 1, *Policies and Procedures* § 2.4.

30.    By entering into and annually renewing their Agreements with It Works!, the Distributor Defendants agreed to comply with all of the terms and conditions set forth in the Agreement (including all amendments or modifications that It Works! elected to make from time to time in its sole and absolute discretion) as well as all federal, state, and local laws governing their business and their conduct.  *See* Exhibit 1, *Policies and Procedures* §§ 1.2 & 1.3.

31.    The Agreement gave the Distributor Defendants valuable rights in connection with their It Works! distributorships including, without limitation: to be compensated pursuant to the terms of the It Works! Compensation Plan, to promote the sale of It Works! product lines, to recruit distributors and customers throughout the United States and nineteen international markets, and to attend world class leadership training and corporate events.

32.    The Agreement sets the standard for acceptable business conduct of It Works! distributors, and expressly states that the success of It Works! distributors (and, therefore, of It Works! itself) "depends on the integrity of the men and women who market [It Works!'] products and services."  *See* Exhibit 1, *Policies and Procedures* § 1.2.

**The Distributor Defendants' Non-Compete Obligations**

33.    The Agreement is not an exclusive arrangement.  It Works! distributors are free to participate in other non-competing multilevel or network marketing business ventures or

marketing opportunities (collectively "network marketing"). *See* Exhibit 1, *Policies and Procedures* § 3.9.1.

34.    However, in the Agreement all It Works! distributors agree—and the Distributor Defendants agreed—that as It Works! distributors they "must not sell, or attempt to sell, any competing non-It Works! programs, products or services." *See* Exhibit 1, *Policies and Procedures* § 3.9.2.[1]

## The Distributor Defendants' Non-Solicitation Obligations

35.    Although they were free to participate in other non-competing network marketing businesses or opportunities, in their Agreements the Distributor Defendants agreed, among other things, not to solicit It Works! distributors or customers for other network marketing businesses during the term of their Agreements and for six months thereafter. *See* Exhibit 1, *Policies and Procedures* § 3.9.1.

36.    Specifically as to non-solicitation, It Works! distributors may not directly or indirectly recruit other It Works! distributors or customers for any other network marketing business while they are It Works! distributors and for a period of six (6) calendar months thereafter. *See* Exhibit 1, *Policies and Procedures* § 3.9.1.[2]

37.    The Agreement defines "recruit" to include "the actual or attempted sponsorship, solicitation, enrollment, encouragement, or effort to influence in any other way, either directly, indirectly, or through a third party, another It Works! Distributor or Loyal Customer to enroll or participate in another multilevel marketing, network marketing or direct sales opportunity"

---

[1] The Agreement defines a competing program as "[a]ny program, product or service that is offered through network marketing or multi-level marketing in the same generic categories as It Works! products or services . . ., regardless of differences in cost, quality, or other distinguishing factors." *Policies and Procedures* § 3.9.2.

[2] The post-term non-solicitation provision in the Agreement includes a limited exception whereby a former It Works! distributor may recruit for another network marketing business only those It Works! distributors personally sponsored (enrolled as distributors) by the former It Works! distributor.

including in response to inquiry made by another It Works! distributor or by announcement on social media.  *See* Exhibit 1, *Policies and Procedures* § 3.9.1.

### The Distributor Defendants' Access to It Works!' Confidential Information and Their Non-Disclosure Obligations

38.     As It Works! distributors, the Distributor Defendants had access to and utilized It Works!' confidential information, including but not limited to Downline Activity Reports—information regarding the sales activity, revenue, and income generated by each of the It Works! distributors who were personally sponsored (enrolled as It Works! distributors) by the Distributor Defendants as well as the sales activity, revenue and income generated by other distributors who were part of their downline organization, including those It Works! distributors' downline activity—as well as to It Works!' eSuite of proprietary financial and operational information. The Downline Activity Reports and eSuite are and contain confidential, proprietary, and trade secret information ("Confidential Information") owned by It Works!, including information concerning:

(a)     proposed products and services;

(b)     financial affairs;

(c)     actual and potential customers and customer information;

(d)     downline distributors;

(e)     organizational matters;

(f)     business and marketing strategies;

(g)     business operations, methodologies, and practices;

(h)     sourcing terms and companies utilized; and

(i)     hardware, operating systems, and infrastructure.

39.     It Works!' Confidential Information affords it a competitive advantage over other direct sales companies, and the continued confidentiality of such Confidential Information is essential to It Works!' viability.

40.     The Confidential Information derives economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure and use.

41.     Furthermore, the Confidential Information is the subject of efforts by It Works! that are reasonable under the circumstances to maintain its secrecy, including but not limited to, restricting access to such information and requiring It Works! distributors, such as the Distributor Defendants, to agree to confidentiality provisions within the Agreement.

42.     In particular, the Distributor Defendants agreed that '[a]ll Downline Activity Reports and the information contained therein are confidential and constitute proprietary information and business trade secrets belonging to It Works!" and that "but for [their] agreement of confidentiality and nondisclosure, It Works! would not provide Downline Activity Reports to the [Distributor Defendants]." *See* Exhibit 1, *Policies and Procedures* § 3.9.4.

43.     Each Distributor Defendant also agreed that he or she:

[S]hall not, on his or her own behalf, or on behalf of any other person or entity:

a)      Directly or indirectly use or disclose any information contained in any Downline Activity Report or in eSuite to any third party;

b)      Directly or indirectly disclose the password or other access code to his or her eSuite;

c)      Use the information contained in any Downline Activity Report or eSuite to compete with It Works! or for any purpose other than managing or supporting his or her It Works! business; or

      d)     Recruit or solicit any Distributor or Customer listed on any Downline Activity Report or in eSuite, or in any manner attempt to influence or induce any Distributor or Customer to alter their business relationship with It Works!.

*See* Exhibit 1, *Policies and Procedures* § 3.9.4.

44.     The Distributor Defendants further agreed that upon It Works!' demand (to any current or former It Works! distributor), they would return the original and all copies of Downline Activity Reports or other information to It Works!. As such, the confidentiality provision survives the expiration or termination of the Agreement. *See* Exhibit 1, *Policies and Procedures* § 3.9.4.

45.     It Works! provided the Distributor Defendants access to the Confidential Information because they executed the Agreement which prohibits the disclosure of Confidential Information and the Distributor Defendants' competition with It Works! and solicitation of its distributors and customers. It Works! would not have disclosed this information to the Distributor Defendants without these protections.

### It Works! Learns of the Distributor Defendants and Melaleuca's Unlawful Scheme To Recruit It Works! Distributors

46.     In or around July, 2020, It Works! learned that Melaleuca and the Distributor Defendants were acting in active concert and participation to perpetrate a brazen and unlawful scheme specifically designed to target current It Works! distributors and encourage them to break their Agreements with It Works! and become distributors for Melaleuca.

47.     In some cases, the Distributor Defendants peddled misleading claims about their success with Melaleuca while encouraging It Works! distributors to not only break their own Agreements, but also to solicit other current It Works! distributors to move to Melaleuca and shirk their contractual obligations to It Works! as well.

48.     Among other unfair, deceptive, and unlawful tactics, It Works! is informed and believes that at the direction of Melaleuca, the Distributor Defendants approached current It Works! distributors and falsely asserted that It Works! was "going out of business" in as little as three months.  In one instance, Distributor Defendant Geneveve Sykes presented a recruiting video conference that took place on July 27, 2020 and stated: "I don't see It Works! lasting a couple more months from what I know."  During the July 27, 2020 recruiting video conference, Distributor Defendant Geneveve Sykes also alleged that she still had friends with It Works! "corporate" who told her to "run."

49.     The Distributor Defendants made such statements to It Works! distributors in the context of trying to solicit the It Works! distributors to join Melaleuca.  The patently false statements concerning the health of It Works!' business were made not only to paint It Works! in a bad light but also to create a false sense of urgency for It Works! distributors to break their Agreements with It Works! and make the jump to Melaleuca.

50.      In addition to outright lies regarding the status of It Works!' business, the Distributor Defendants also engaged in other deceitful solicitation tactics, such as providing It Works! distributors with copies of fake checks purportedly representing substantial amounts of monthly compensation received from Melaleuca.

51.      In one example, Defendant Amber Hoerner sent a text message to a current It Works! distributor named Karen that included an image of two fake checks supposedly received from Melaleuca in March 2020 in the amounts of $43,576.26 and $35,437.75.  *See* Exhibit 2, Text Message from Hoerner.

52.     Upon information and belief, fake checks were produced by Melaleuca and placed in the Distributor Defendants' back offices purporting to be signed by the Melaleuca owner.

These checks that were sent by Defendant Hoerner and other Distributor Defendants do not actually represent monthly amounts received by a Melaleuca distributor. Rather, if the amounts were received at all, the amounts represent compensation received by a Melaleuca distributor for multiple months or even the entire year. Melaleuca's actions in dating the fake checks for a specific month were employed as a devious artifice intended to convey an inflated sense of the compensation that a Melaleuca distributor received or that an It Works! distributor being solicited could expect to receive from Melaleuca.

53.     As to Defendant Hoerner, the images of the fake checks were also accompanied by a message from her insinuating that the It Works! distributor who received the message, Karen, was underpaid by It Works!. The message asked Karen if she "ever found the success [Karen] had worked for for all those years." *See id.* Defendant Hoerner also referenced another It Works! distributor named Jennifer and suggested that Jennifer was underpaid as well earning as much as $900 during an unspecified period. According to Defendant Hoerner, she left It Works! out of concern for her "team" struggling.

54.     The images of the fake checks, the amounts of the checks juxtaposed with references to supposedly lesser amounts made by It Works! distributors, the use of specific It Works! distributor names, and posing of a loaded, rhetorical question as to whether Karen "ever found success" after working hard for "all those years" are all part of an intentionally concocted negative messaging campaign designed to invoke harmful and otherwise damaging sentiments with current It Works! distributors and to dupe them into believing they are somehow being underpaid and / or mistreated.

55.     Moreover, Defendant Hoerner's reference to her alleged concerns for her team's struggles at It Works! are further intended to not-so-subtly encourage the target of the misleading

and negative messaging, in this case Karen, to consider not only leaving It Works! herself but to encourage other distributors on her team to do so as well.

56.    On its face, the type of messaging conveyed by Defendant Hoerner and others is misleading and unfair to all involved.  Unfortunately for the Distributor Defendants and Melaleuca, the United States Federal Trade Commission ("FTC") agrees, and Melaleuca has as recently as last month found itself in the FTC's cross hairs for making misleading claims concerning the income purportedly earned by its distributors.  *See* Exhibit 3, June 5, 2020 Letter from Federal Trade Commission to Melaleuca.

57.    The FTC has long grappled with bad actors such as Melaleuca in the multi-level marketing industry and has deemed recruiting tactics such as those used by Melaleuca distributors to be misleading.  In particular, the FTC's website sets out "some guiding principles" that include:

a.    Some business opportunities may present themselves as a way for participants to get rich or lead a wealthy lifestyle.  They may make such representations **through words or through images** . . . . **If participants generally do not achieve such results, these representations likely would be false or misleading to current or prospective participants**.

b.    Business opportunities may also claim that participants, while not necessarily becoming wealthy, can achieve career-level income. They may represent through words or images that participants can earn thousands of dollars a month, quit their jobs, "fire their bosses," or become stay-at-home parents. If participants generally do not achieve such results, these representations likely would be false or misleading to current or prospective participants.

c.    **Even truthful testimonials from the very small minority of participants who do earn career-level income or more will likely be misleading unless the advertising or presentation also makes clear the amount earned or lost by most participants**.

*See* Federal Trade Commission, *Business Guidance Concerning Multi-Level Marketing* (January 2018) (emphasis added), *available at* https://www.ftc.gov/tips-advice/business-center/guidance/business-guidance-concerning-multi-level-marketing.

58.    Notably, Defendant Hoerner's unabashed representations about her income do not include any qualifying statements whatsoever about what a typical distributor for Melaleuca could expect to earn, and as a result, such statements are clearly misleading.

59.    In fact, Melaleuca itself has published statistics showing that its typical distributor earns far less than what Defendant Hoerner purported to earn.  *See* Exhibit 4, Melaleuca, *Melaleuca Leadership in Action*, at Pg. 52 (Ed. July 2020).  Melaleuca instructs its distributors—referred to by Melaleuca as "Marketing Executives"—not to make income claims, stating: "Most people with a Melaleuca business use their Melaleuca business to supplement their income. Even for those who put serious time and effort into building a Melaleuca business, it normally takes years to build the business to the point that anyone should ever consider leaving their full-time job to live only on their Melaleuca income."  *See* Exhibit 5, Melaleuca, *Building Your Business Online: Guidelines for Using the Internet, Social Media, and Electronic Communications* at Pg. 7 (hereinafter "Melaleuca Online Guidelines").

60.    The Defendant Distributors, as top Melaleuca Marketing Executives, should know and understand their own Policies and Procedures, yet all violated the Melaleuca Policies and Procedures multiple times.  Section 32 of the Melaleuca Policies and Procedures provides:

32. Income Claims
Marketing Executives are prohibited from making false, misleading or inaccurate claims about their or other persons' compensation received under the Compensation Plan. If, when presenting the Melaleuca business opportunity, a Marketing Executive makes any claim regarding his/her compensation from Melaleuca, or the potential compensation payable under Melaleuca's Compensation Plan, the Marketing Executive must also show the person(s) receiving the presentation Melaleuca's most current published Marketing Executives Annual Income Statistics sheet.

61.    Clearly Melaleuca understands the importance of abiding by its policies and procedures.  As Melaleuca clearly stated recently in an article addressing a warning letter

received by Melaleuca from the Federal Trade Commission based upon false income claims made by a distributor it terminated:  "[C]ontrary to Melaleuca's policies, you are promoting a business opportunity primarily based on finding people interested in earning money rather than on attracting real customers with genuine interest in Melaleuca's products."  *See* Exhibit 6, Idaho Statesman, *FTC Warns Firm Owned by Idaho's Richest Man About Marketing Claims* (June 9, 2020), *available at* https://www.idahostatesman.com/news/business/article243369041.html

62.    The company informed the FTC of the action it took, stating: "It's not unusual, [Melaleuca owner Frank] VanderSloot said, for the company to terminate representatives who violate company polices. "That's one thing we can't afford to mess around with," VanderSloot said. "We have these policies in place, and if we don't enforce them, they aren't worth anything."  The FTC warning letter distributor was terminated for promoting that new Melaleuca representatives "are likely to earn substantial income." *See* Exhibit 6.

63.    This termination-worthy representation pales in comparison to handing out checks that falsely represent hundreds of thousands of dollars earned per month.  Yet none of the Distributor Defendants have been terminated for violating Melaleuca Policies and Procedures. Melaleuca Policy and Procedure Section 40(c) states:

> Online training and information content may not:
>
> (i) be used for the purpose of soliciting new customers or Marketing Executives, except when used for a live presentation of the Melaleuca Overview slides;

64.    Either Melaleuca has incorporated fabrications about It Works! into its Overview slides or the Distributor Defendants have violated this Melaleuca provision on numerous occasions.  For example, Defendant Rankin has made her prerecorded presentation available online, while also conducting new recruitment meetings almost every night.

65.    In addition, Melaleuca's publication Building Your Business Online: Guidelines for Using the Internet, which is incorporated by reference into the Melaleuca Policies and Procedures, provides: "Do not:  Make any public mention or post copies of checks from Melaleuca."  *See* Exhibit 5, Melaleuca Online Guidelines at Pg. 6.

66.    It Works! has suffered direct financial losses due to the actions of the Distributor Defendants and Melaleuca.  Currently a minimum of 250 It Works! distributors have left It Works! and joined Melaleuca.

67.    The two most recent Distributor Defendants who terminated their agreement with It Works!, Lea Piccoli and Sarah Rankin, illustrate why it is necessary to protect It Works! through injunctive relief.  For the month of June 2020, Piccoli had approximately $380,000 in sales with It Works! and Rankin had about $1.4 million in sales with It Works.  Further in June, Piccoli had a total of 22,834 active and inactive distributors and customers in her downline organization, while Rankin had a total of 136,220 active and inactive distributors and customers in her organization.

68.    Other Distributor Defendants have also relied on similar misleading tactics with Melaleuca having knowledge of and being the driving force behind them.

69.    As another example, Defendants Ashley Olive and Brandon Olive have also solicited It Works! distributors by disclosing a fake check that supposedly shows income from Melaleuca in the amount of $301,703.81 for April 2020.  *See* Exhibit 7, May 12, 2020 Check to Ashley and Brandon Olive.  Whether or not they actually received the stated amount from Melaleuca, the clear purpose behind relying on the fake check in soliciting It Works! distributors is to imply that It Works! distributors would achieve comparable income levels by doing nothing more than breaking their Agreements with It Works! and joining Melaleuca.

70.    Significantly, this is Ashley Olive's second bite at the apple, and she is well aware of the wrongful nature of her conduct.

71.    On or about September 25, 2018, It Works! sent Defendant Ashley Olive a cease and desist letter, with notice to the Melaleuca legal department, regarding nearly identical misconduct by Olive attempting to lure It Works! distributors into terminating their contract in order to join Melaleuca.  *See* Exhibit 8, September 25, 2018 Letter to Ashley Olive.

72.    At the time of the September 25, 2018 letter, Ashley Olive was within the six-month non-solicitation period set forth in the Agreement she signed with It Works!  *See* Exhibit 1, *Policies and Procedures* § 3.9.1.  Upon information and belief, Defendant Ashley Olive's most recent antics viewed in light of her prior wrongful conduct as outlined in the September 25, 2018 letter shows that her violation of her contractual obligations with It Works! has been systemic, ongoing, and continuous in nature.

73.    In a transparent attempt to burnish the credibility their deceptive and delusive claims to It Works! distributors, Defendants Ashley and Brandon Olive have at times published to It Works! distributors what purports to be an official-looking April 2020 Business Report Summary showing more than seven figures in income received from Melaleuca.  *See* Exhibit 9, April 2020 Business Report Summary from Ashley and Brandon Olive.

74.    It is no coincidence that Distributor Defendants Makenzie Schultz, Steven Shultz, Kellie Kaufman, Geneveve Sykes (through the name Get Fit With Gen, Inc.), and Jeanie McWhorter have all relied on similar tactics in publishing by text message or social media fake checks or excerpts from "Business Summaries" showing substantial amounts allegedly received from Melaleuca.  *See* Exhibit 10, May 12, 2020 Check to Makenzie & Steven Shultz in the amount of $118,502.11; Exhibit 11, Kellie Kaufman Message and Commission and Bonus

Summary; Exhibit 12, Jeanie McWhorter Message and Commission and Bonus Summary;
Exhibit 13, Geneveve Sykes April 2020 Business Report Summary; Exhibit 14, May 12, 2020
Check to Kimberly Bertolucci & April 2020 Bertolucci Business Report Summary.

75.     Melaleuca encourages its distributors to solicit and/or poach distributors from
competing companies through the use of deceptive claims regarding the income that potential
distributors could reasonably expect to receive.  Melaleuca and its distributors, including the
Distributor Defendants, promote the use of such tactics through hosting events such as online
"Check Opening Zooms" where distributors are encouraged to publicly disseminate deceptive
information misrepresenting the circumstances of the compensation they receive. See Exhibit 15.

## COUNT I

### [Breach of the Agreements – Injunctive Relief]

76.     It Works! realleges paragraphs 1 through 75 as if fully set forth in this Count.

77.     This is an action for injunctive relief against the Distributor Defendants and
Melaleuca.

78.     The Agreements are valid and binding contracts.

79.     The Distributor Defendants have breached their Agreements by selling, or
attempting to sell, Melaleuca's competing network marketing programs, products and services.

80.     The Distributor Defendants have also breached their Agreements by soliciting It
Works! distributors and customers for Melaleuca's competing network marketing programs,
products and services, and have done so during the term of their Agreements and thereafter.

81.     The Distributor Defendants and Melaleuca's solicitation of It Works! distributors
and customers for Melaleuca's competing network marketing programs, products and services
includes illegal recruiting of It Works! distributors, procuring It Works! distributors' resignations

from It Works!, and having those former It Works! distributors join Melaleuca's competing

network marketing business to sell its programs, products and services.

82.     The Distributor Defendants and Melaleuca's solicitation of It Works! distributors

and customers includes requesting, inducing and / or advising persons to withdraw, curtail, or

cancel their existing and prospective business and business relationships with It Works!.

83.     The Distributor Defendants have further breached their Agreements by making

inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential

Information, including Downline Activity Reports and eSuite information:

(a)     to third parties including Melaleuca;

(b)     to compete with It Works! for purposes other than managing or supporting the

Distributor Defendants' It Works! business;

(c)     to recruit and solicit It Works! distributors and customers—including those listed

on Downline Activity Reports or in eSuite; and

(d)     to influence or induce, or attempt to influence or induce, It Works! distributors

and customers to alter (indeed, to terminate) their business relationships with It

Works!.

84.     The non-competition provisions of the Agreement are supported by adequate

consideration and It Works!' legitimate business interests of its:  (1) trade secrets, including the

Confidential Information; (2) valuable confidential business information, including the

Confidential Information; (3) substantial relationships with existing and prospective It Works!

distributors and customers; (4) substantial goodwill associated with its name and service marks;

(6) substantial goodwill in the United States and international markets; and (7) extraordinary and

specialized training provided to the Distributor Defendants.

85.     There is a real and immediate threat going forward that the Distributor Defendants will:

(a)     sell, or attempt to sell, Melaleuca's competing network marketing programs, products and services;

(b)     solicit It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services; and

(c)     make inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential Information, including Downline Activity Reports and eSuite information;

all in violation of the restrictive covenants and confidentiality provisions of the Agreement.

86.     Melaleuca, by virtue of its relationship with the Distributor Defendants, has knowledge of the restrictive covenants and confidentiality provisions applicable to the Distributor Defendants in the Agreement.

87.     The Distributor Defendants and Melaleuca's breaches of the restrictive covenants and confidentiality provisions of the Agreement have resulted and will continue to result in irreparable and continuing harm to It Works!, its business, distributor and customer relationships, goodwill, and other proprietary interests, for which It Works! has no adequate remedy at law.

88.     The Distributor Defendants and Melaleuca's breaches of the restrictive covenants and confidentiality provisions of the Agreement also have resulted and will continue to result in other significant, long-term damage to It Works! and will provide a significant unfair and unlawful advantage to the Distributor Defendants and Melaleuca.

89.     Unless the Distributor Defendants and Melaleuca are enjoined by this Court from engaging in the wrongful conduct described herein, It Works! will suffer irreparable harm for which it lacks an adequate remedy at law.

90.     It Works! has been and is likely to continue to be substantially and irreparably injured in its business, customer relationships, goodwill, and other proprietary interests, and the threat of continued injury to its business, customer relationships, goodwill, and other proprietary interests outweighs any harm the issuance of an injunction may inflict upon the Distributor Defendants or Melaleuca.

91.     In light of the foregoing, the provisions of the Agreement which It Works! seeks to enforce are reasonably necessary to protect the above-described legitimate business interests justifying the restrictions.

92.     It Works! has a substantial likelihood of success on the merits of its claims.

93.     The Court's entry of the requested injunction will serve the public interest by honoring the Agreements freely negotiated by the parties and protecting the legitimate business interests of It Works! which the Agreements were intended to protect in the first instance.

94.     It Works! has engaged the law firm Shumaker, Loop & Kendrick, LLP and is obligated to pay reasonable attorneys' fees and costs for its services in this matter.

WHEREFORE**,** Plaintiff, It Works! Marketing, Inc., demands judgment against Defendants, Melaleuca Inc., Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes, and Sean Sykes:

(a)     preliminarily and permanently enjoining the Defendants, their officers, agents, servants, employees, and attorneys, and all persons or entities in active concert or

participation with them who receive actual notice of the injunction by personal service or otherwise, from:

    (i)      selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services;

    (ii)     soliciting It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services; and

    (iii)    make inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential Information, including Downline Activity Reports and eSuite information;

(b)    ordering the Defendants to return all Confidential Information to It Works!; and

(c)    awarding attorneys' fees, costs, and all other relief to which It Works! is entitled at law or in equity.

## <u>COUNT II</u>

### [Breach of the Agreements – Damages]

95.    It Works! realleges paragraphs 1 through 75 as if fully set forth in this Count.

96.    This is an action for damages against the Distributor Defendants for breach of the Agreements.

97.    The Agreements are valid and binding contracts.

98.    The Distributor Defendants breached their Agreements by selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services.

99.    The Distributor Defendants also breached their Agreements by soliciting It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services, and have done so during the term of their Agreements and thereafter.

100.    The Distributor Defendants further breached their Agreements by making inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential Information, including Downline Activity Reports and eSuite information:

(a)     to third parties including Melaleuca;

(b)     to compete with It Works! for purposes other than managing or supporting the Distributor Defendants' It Works! business;

(c)     to recruit and solicit It Works! distributors and customers—including those listed on Downline Activity Reports or in eSuite; and

(d)     to influence or induce, or attempt to influence or induce, It Works! distributors and customers to alter (indeed, to terminate) their business relationships with It Works!.

101.    The Distributor Defendants have breached the Agreements including, without limitation, Sections 3.9.1, 3.9.2 and 3.9.4 of the It Works! Policies and Procedures in the Agreements.

102.    As a direct and proximate result of these breaches of the Agreements, It Works! has suffered damages.

103.    It Works! has engaged the law firm Shumaker, Loop & Kendrick, LLP and is obligated to pay reasonable attorneys' fees and costs for its services in this matter

WHEREFORE**,** Plaintiff, It Works Marketing, Inc., demands judgment against Defendants, Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes, and Sean Sykes, for damages in an amount to be proved at trial, together with interest, costs, attorneys' fees, and all other relief to which It Works! is entitled at law or in equity.

## COUNT III

**[Breach of the Implied Contractual Covenant of Good Faith and Fair Dealing]**

104.     It Works! realleges paragraphs 1 through 75 as if fully set forth in this Count.

105.     The Distributor Defendants breached the implied covenant of good faith and fair dealing that Florida law recognizes in every contract, including the Agreements by selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services.

106.     The Distributor Defendants also breached the implied covenant of good faith and fair dealing by soliciting It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services, and have done so during the term of their Agreements and thereafter.

107.     The Distributor Defendants further breached the implied covenant of good faith and fair dealing by making inevitable and unauthorized use, disclosures and transfers of It Works! Confidential Information.

108.     The Distributor Defendants' breaches of the Agreement were conscious and deliberate and resulted in a frustration of the purpose of the Agreement in contravention of the parties' reasonable commercial expectations that the Distributor Defendants would not misuse or make unauthorized use or disclosure of the It Works! Confidential Information in an effort to compete with It Works!

109.     As a direct and proximate result of the Distributor Defendants' breach of the implied contractual covenant of good faith and fair dealing, It Works! has suffered damages.

WHEREFORE**,** Plaintiff, It Works Marketing, Inc., demands judgment against Defendants, Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin,

Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes, and Sean Sykes, for damages in an amount to be proved at trial, together with interest, costs, and all other relief to which It Works! is entitled at law or in equity.

## COUNT IV

### [Tortious Interference with Business Relationships]

110.    It Works! realleges paragraphs 1 through 75 as if fully set forth in this Count.

111.    This is an action for damages against the Distributor Defendants and Melaleuca for tortious interference with business relationships.

112.    It Works! has legal rights in identifiable, advantageous business relationships with its distributors and customers.

113.    The Defendants had knowledge of It Works!' existing business relationships with distributors and customers by virtue of the contractual relationships established through entry of the Agreements and by a substantial history of prior orders by such It Works! distributors and customers.

114.    The Defendants intentionally and unjustifiably interfered with It Works!' existing business relationships with its distributors and customers.

115.    As a result of the Defendants' intentional and wrongful conduct, It Works! distributors have terminated their distributor relationships with It Works!.

116.    As a result of the Defendants' intentional and wrongful conduct, It Works! customers have terminated their business with It Works!.

117.    It Works! has been damaged as a result of the Defendants' intentional and unjustified interference with It Works!' business relationships with its distributors and customers.

WHEREFORE, Plaintiff, It Works Marketing, Inc., demands judgment against Defendants, Melaleuca Inc., Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes, and Sean Sykes jointly and severally, for damages in an amount to be proved at trial, including punitive damages, interest, costs, and all other relief to which It Works! is entitled at law or in equity.

## COUNT V

### [False Advertising Under the Lanham Act, 15 U.S.C. § 1125]

118.    It Works! realleges paragraphs 1 through 75 as if fully set forth in this Count.

119.    This is an action for damages against the Distributor Defendants and Melaleuca for false advertising under the Lanham Act, 15 U.S.C. § 1125.

120.    The Distributor Defendants and Melaleuca have made false statements of fact in commercial advertisements about allegedly superior commercial opportunities available to Melaleuca distributors over It Works! distributors, including false and misleading statements concerning the income that It Works! distributors and other persons could expect to receive after joining Melaleuca ("income claims").

121.    Those statements by Defendants are false on their face or by necessary implication, inaccurate, and/or the statements are likely to mislead or confuse a substantial portion of their intended audience.

122.    Defendants' unsubstantiated income claims actually deceived or have the potential to deceive a substantial segment of the intended audience, to induce It Works! distributors to breach their Agreements and enroll with Melaleuca, and to mislead the audience

into believing that they can and will in fact earn tens of thousands or more per month working as distributors for Melaleuca, which representations are utterly false.

123.    The Defendants' unsubstantiated income claims are material and are likely to influence the willingness of the audience to become Melaleuca distributors by purchasing that business opportunity.

124.    The Defendants caused their false statements to enter interstate commerce by publishing those statements on the internet, through online electronic meeting platforms or through text messages, and/or other electronic communication means crossing state lines.

125.    It Works! is or is likely to be injured as a result of the Defendants' false income claims by direct diversion of distributors to and sales of competing products by Melaleuca.

WHEREFORE, Plaintiff, It Works Marketing, Inc., demands judgment against Defendants, Melaleuca Inc., Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes and Sean Sykes, jointly and severally, for damages in an amount to be proved at trial, including punitive damages, interest, costs, and all other relief to which It Works! is entitled at law or in equity.

## COUNT VI

### [Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*]

126.    It Works! realleges paragraphs 1 through 75 as if fully set forth in this Count.

127.    This is an action for damages against the Distributor Defendants and Melaleuca for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

128.    It Works! possessed trade secret information, including the Confidential Information, and took reasonable steps to protect its secrecy, including, but not limited to, restricting access to such information and requiring It Works! distributors, such as the Distributor Defendants, to sign confidentiality agreements.

129.    The Confidential Information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure.

130.    The Distributor Defendants obtained the Confidential Information under circumstances giving rise to a duty to maintain the secrecy of the Confidential Information or limit its use, including through contractual and other business relationships.

131.    Melaleuca has reason to know that such Confidential Information was obtained under a duty to maintain its secrecy.  Melaleuca wrongfully acquired the Confidential Information at least by soliciting the information from It Works distributors who had or have a duty of loyalty to It Works and an obligation, contractual and otherwise, to maintain the confidentiality of such information.

132.    The Distributor Defendants and Melaleuca made unauthorized disclosure and use of the Confidential Information by selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services.

133.    The misuse and authorized disclosure of It Works Confidential Information is ongoing, and by soliciting It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services, the Distributor Defendants and Melaleuca have and will continue to misappropriate It Works!' trade secret information by, among other things, making inevitable and unauthorized use, disclosures and transfers of It Works!'

Confidential Information, including Downline Activity Reports and eSuite information, including to Melaleuca.

134.    The Distributor Defendants and Melaleuca know or have reason to know that It Works!' trade secret information was improperly obtained for the purposes of selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services, and soliciting It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services.

135.    As a direct and proximate result of the Distributor Defendants and Melaleuca's misappropriation of It Works!' trade secret information, It Works! has suffered damages.

136.    It Works! has engaged the law firm Shumaker, Loop & Kendrick, LLP and is obligated to pay reasonable attorneys' fees and costs for its services in this matter.

WHEREFORE, Plaintiff, It Works Marketing, Inc., demands judgment against Defendants, Melaleuca Inc., Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes and Sean Sykes, jointly and severally, for damages in an amount to be proved at trial, including unjust enrichment and exemplary damages, together with interest, costs, attorneys' fees, and all other relief to which It Works! is entitled at law or in equity.

## COUNT VII

### [Misappropriation of Trade Secrets - § 688.001, *et seq.*, Fla. Stat.]

137.    It Works! realleges paragraphs 1 through 75 as if fully set forth in this Count.

138.    This is an action for damages against the Distributor Defendants and Melaleuca for misappropriation of trade secrets under the Florida Uniform Trade Secrets Act, § 688.001, *et seq.*, Fla. Stat.

139.    It Works! possessed trade secret information, including the Confidential Information, and took reasonable steps to protect its secrecy, including, but not limited to, restricting access to such information and requiring It Works! distributors, such as the Distributor Defendants, to sign confidentiality agreements.

140.    The Confidential Information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure.

141.    The Distributor Defendants obtained the Confidential Information under circumstances giving rise to a duty to maintain the secrecy of the Confidential Information or limit its use, including through contractual and other business relationships.

142.    Melaleuca has reason to know that such Confidential Information was obtained under a duty to maintain its secrecy.  Melaleuca wrongfully acquired the Confidential Information at least by soliciting the information from It Works distributors who had or have a duty of loyalty to It Works and an obligation, contractual and otherwise, to maintain the confidentiality of such information.

143.    The Distributor Defendants and Melaleuca made unauthorized disclosure and use of the Confidential Information by selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services.

144.    The misuse and authorized disclosure of It Works Confidential Information is ongoing, and by soliciting It Works! distributors and customers for Melaleuca's competing

network marketing programs, products and services, the Distributor Defendants and Melaleuca have and will continue to misappropriate It Works!' trade secret information by, among other things, making inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential Information, including Downline Activity Reports and eSuite information, including to Melaleuca.

145.    The Distributor Defendants and Melaleuca know or have reason to know that It Works!' trade secret information was improperly obtained for the purposes of selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services, and soliciting It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services.

146.    As a direct and proximate result of the Distributor Defendants and Melaleuca's misappropriation of It Works!' trade secret information, It Works! has suffered damages.

147.    It Works! has engaged the law firm Shumaker, Loop & Kendrick, LLP and is obligated to pay reasonable attorneys' fees and costs for its services in this matter.

WHEREFORE, Plaintiff, It Works Marketing, Inc., demands judgment against Defendants, Melaleuca Inc., Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes and Sean Sykes, jointly and severally, for damages in an amount to be proved at trial, including unjust enrichment and exemplary damages, together with interest, costs, attorneys' fees, and all other relief to which It Works! is entitled at law or in equity.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, It Works Marketing, Inc., hereby demands a trial by jury of all issues so triable.

Dated:  July 28, 2020.

*/s/  Ernest J. Marquart*
Ernest J. Marquart, Florida Bar No. 905860
Jeffrey B. Fabian, Florida Bar No. 85868
SHUMAKER, LOOP & KENDRICK, LLP
101 East Kennedy Blvd.
Suite 2800
Tampa, Florida 33602
Telephone:  (813) 229-7600
Facsimile: (813) 229-1660
emarquart@shumaker.com (Primary e-mail)
mdesilles@shumaker.com (Secondary e-mail)
jfabian@shumaker.com (Primary e-mail)
ldyer@shumaker.com (Secondary e-mail)
*Attorneys for Plaintiff*