# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| It Works Marketing, Inc. | Civil Action No. |
| Plaintiff, | 8:20-cv-01743-TPB-TGW |
| -against- | |
| Melaleuca, Inc., Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes, and Sean Sykes | |
| Defendants. | |

## DEFENDANT MELALEUCA, INC.'S MOTION TO DISMISS OR MOTION TO COMPEL ARBITRATION

Defendant Melaleuca, Inc. ("Melaleuca"), pursuant to FRCP 9(b), 12(b)(1), 12(b)(2), and 12(b)(6), moves this Court to enter an Order dismissing Plaintiff's Complaint with prejudice as follows: (a) dismissal of Plaintiff's claims against Melaleuca, for lack of personal jurisdiction under Rule 12(b)(2); (b) in the alternative, dismissal of Plaintiff's claims in favor of the arbitration and mediation provisions in the Distributor Agreement pursuant to Rule 12(b)(1) and the Federal Arbitration Act ("FAA"); or (c) in the further alternative, dismissal of Plaintiff's claims against Melaleuca for failure to state a claim under Rule 12(b)(6).  Pursuant to Local Rule 3.01(a), Melaleuca respectfully submits the following memorandum of legal authority in support.

### Background

It is a tale as old as time: two businesses compete, and one ultimately proves more successful.  The loser, unwilling to wave the white flag, files a frivolous lawsuit against the victor.  And so it is for that reason that Melaleuca, an Idaho corporation with a principal place of business in Idaho, has been haled into this Court in Florida, notwithstanding that the Complaint

fails to allege a single act by Melaleuca — bad or good — that occurred in Florida, and notwithstanding that the Complaint fails to allege any misconduct by Melaleuca at all.

Melaleuca is an Idaho corporation with a principal place of business in Idaho Falls, Idaho.  Compl. ¶ 3.  Melaleuca is a competitor of It Works Marketing, Inc. ("Plaintiff" or "It Works!").  Compl. ¶¶ 2–3, 33.[1]

Beginning in August 2018, It Works! began hemorrhaging its sales force.  Compl. ¶ 4–17.  On August 18, 2018, four of It Works!' distributors — Ashley and Brandon Olive and Makenzie and Steven Schultz — chose to leave It Works!  Compl. ¶¶ 9–10, 14–15.  On August 29, 2018, a fifth It Works! distributor — Jeanie McWhorter — also chose to leave the company.  Compl. ¶ 8.  On October 1, 2018, a sixth It Works! distributor — Amber Hoerner —left the company.  Compl. ¶ 6.  On November 27, 2018, two more distributors — Geneveve and Sean Sykes — also left It Works!  Compl. ¶¶ 16–17.  On September 25, 2019, a ninth distributor — Kimberly Bertolucci a/k/a Kimberly McCauley — left It Works!  Compl. ¶ 4.  On April 15, 2020, a tenth distributor — Kellie Kaufman — left It Works!  Compl. ¶ 7.  On July 21, 2020, two more distributors — Sarah and Joshua Rankin — left It Works!  Compl. ¶¶ 12–13.  On July 22, 2020, a thirteenth distributor — Katie Herold — left It Works!  Compl. ¶ 5.  On July 23, 2020, a fourteenth distributor — Lea Piccoli — left It Works!  Compl. ¶ 11.

These distributors live across the country, with half of them living west of the Mississippi and only four living in Florida.  Compl. ¶¶ 4–17.  While it is unclear when, at some point in the last 2+ years, these distributors began working with Melaleuca.  Compl. ¶ 60.  Plaintiff alleges that these distributors began making unspecified misleading statements to "recruit" It Works!'

---

[1] Melaleuca has not independently verified the truthfulness of these allegations.  Melaleuca must accept any well-pled factual allegations in the Complaint as true for purposes of its 12(b)(6) motion to dismiss. Despite Plaintiff's sophomoric attempts to infer otherwise, Melaleuca's restraint in engaging on the facts at this juncture cannot be read as agreement.

remaining distributors.  Compl. ¶ 48.  Plaintiff asserts that these distributors breached non-solicitation and non-compete provisions in their contracts with It Works!  Compl. ¶¶ 79–80.  Plaintiff recognizes that the non-solicitation provision applies only during the first six months after a distributor's resignation from It Works!, and the provision includes an exception that allows the former distributor to solicit distributors originally recruited to It Works! by the former distributor.  Compl. ¶¶ 35, 36 n.2.  Furthermore, the non-compete provision applies only during the distributors' time working with It Works!  *See* Compl. ¶ 34 (providing that ***distributors*** "must not sell, or attempt to sell, any competing non-It Works! programs, products or services").  The Distributor Agreement provides that "[e]xcept as otherwise provided in the Agreement, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled through confidential arbitration" and that, prior to instituting an arbitration, the parties shall attempt to mediate their dispute.  Dist. Agt. (D.E.-1-2) §§ 8.3, 8.4.

The heart of Plaintiff's Complaint is that these distributors allegedly engaged in misleading practices to recruit certain It Works! distributors; however, the only specifics that the Complaint gives are the following, none of which is alleged to have occurred in Florida:

*First*, "Distributor Defendant Geneveve Sykes presented a recruiting video conference that took place on July 27, 2020 and stated: 'I don't see It Works! lasting a couple more months from what I know.'"  Compl. ¶ 48.  During the video conference, she stated that "she still had friends with It Works! 'corporate' who told her to 'run.'"  *Id.*  The Complaint does not acknowledge that the first statement is a matter of opinion, nor does the Complaint allege that the second statement was false.  *Id.*

*Second*, "Defendant Amber Hoerner sent a text message to a current It Works! distributor named Karen that included an image of two fake checks supposedly received from Melaleuca in

March 2020 in the amounts of $43,576.26 and $35,437.75."  Compl. ¶ 51.  Ms. Hoerner allegedly "insinuat[ed] that the It Works! distributor who received the message, Karen, was underpaid by It Works!"  Compl. ¶ 52.  Notwithstanding the use of the word "fake," Plaintiff caveats that the checks may have actually been real; instead, Plaintiff complains that the fact that the checks had a date listed on them was allegedly "a devious artifice" that could make someone think that those were the amounts received by the distributor for just one month.  *Id.*

Third, "Defendants Ashley Olive and Brandon Olive have also solicited It Works! distributors by disclosing a fake check that supposedly shows income from Melaleuca in the amount of $301,703.81 for April 2020."  Compl. ¶ 69.  The Complaint also alleges that Ms. Olive engaged in "nearly identical" conduct in approximately September 2018, Compl. ¶ 71, and that they have published an April 2020 Business Report Summary showing their income, Compl. ¶ 73.  Again, despite the use of the word "fake," the Complaint recognizes that the Olives may have "actually received the stated amount from Melaleuca," and it does not assert that anything in the Business Report Summary was false.  *Id.*

Fourth, "Distributor Defendants Makenzie Schultz, Steven Shultz [*sic*], Kellie Kaufman, Geneveve Sykes (through the name Get Fit With Gen, Inc.), and Jeanie McWhorter have all relied on similar tactics in publishing by text message or social media fake checks or excerpts from 'Business Summaries' showing substantial amounts allegedly received from Melaleuca."  Compl. ¶ 74.  The Complaint does not allege that they did not actually receive these sums, nor does it provide any specificity with respect to the "when," the "where," or the "to whom."  *Id.*

Separately, the Complaint tacks on two claims for alleged misappropriation of trade secrets.  Compl. 126–47.  Plaintiff alleges that its former distributors had access to certain "Confidential Information," which is broadly "defined" as:

including ***but not limited to*** Downline Activity Reports—information regarding the sales activity, revenue, and income generated by each of the It Works! distributors who were personally sponsored . . . by the Distributor Defendants as well as the sales activity, revenue and income generated by other distributors who were part of their downline organization, including those It Works! distributors' downline activity—as well as to It Works!' eSuite of proprietary financial and operational information.  The Downline Activity Reports and eSuite are and contain confidential, proprietary, and trade secret information ("Confidential Information") owned by It Works!, including information concerning: (a) proposed products and services; (b) financial affairs; (c) actual and potential customers and customer information; (d) downline distributors; (e) organizational matters; (f) business and marketing strategies; (g) business operations, methodologies, and practices; (h) sourcing terms and companies utilized; and (i) hardware, operating systems, and infrastructure.

Compl. ¶ 38 (emphasis added).  Plaintiff alleges that the Distributor Defendants (i.e., every Defendant except Melaleuca) used this information to recruit It Works! distributors, but does not allege that they used it in Florida.  Compl. ¶¶ 131–33.

## I.      Rule 12(b)(2) Motion:  The Court Lacks Personal Jurisdiction Over Melaleuca

## A.      Legal Standard

Pursuant to Rule 12(b)(2), the Court will dismiss a defendant at the pleading stage if it lacks personal jurisdiction over that defendant.  Fed. R. Civ. P. 12.  The requirement that federal courts have personal jurisdiction over the parties arises from "an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  "[W]here the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present."  *Liste v. Cedar Fin.*, No. 13-cv-3001, 2015 WL 439442, at *4 (M.D. Fla. Feb. 3, 2015) (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th. Cir. 2009)).  To meet its burden, a plaintiff must first allege in its complaint "sufficient facts to make out a prima facie case of jurisdiction."  *United*

*Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  A prima facie case is established

only if the plaintiff "presents enough evidence to withstand a motion for directed verdict."

*Estate of Miller ex rel. Miller v. Toyota Motor Corp.*, No. 6:07-cv-1358-Orl-19DAB, 2008 WL

516725, at *3 (M.D. Fla. Feb. 22, 2008).

The Court "must address a challenge to its exercise of personal jurisdiction *before*

looking at the other claims in a motion to dismiss."  *Richards v. Fin. Servs. Auth.*, No. 5:09-cv-

447-Oc-32GRJ, 2010 WL 2652509, at *2 (M.D. Fla. May 28, 2010); *see also Ruhrgas AG v.

Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction, too, is 'an essential element

of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an

adjudication.'" (quoting *Emp'rs Reinsurance Corp. v. Bryant*, 299 U. S. 374, 382 (1937))).

Here, Plaintiff has failed to make its prima facie case.

**B.    Argument**

Melaleuca is an Idaho corporation with its principal place of business in Idaho.  Compl.

¶ 3.  The Complaint does not allege that Melaleuca engaged in any misconduct in Florida, nor

that it has ever even visited Florida.  In the absence of any ties to Florida whatsoever, Plaintiff

has failed to establish a prima facie case of jurisdiction, and the Court should dismiss Melaleuca

from the case for lack of personal jurisdiction before engaging with the Complaint on the merits.

The Eleventh Circuit employs a two-part test when determining whether the Plaintiff has

established its prima facie case that jurisdiction over a non-resident defendant is appropriate.  *See

United Techs.*, 556 F.3d at 1274.  First, the court must determine "whether [Florida's] long-arm

statute permits assertion of jurisdiction," either general jurisdiction or specific jurisdiction.

Second, the court must determine "whether sufficient 'minimum contacts' exist to satisfy the due

process requirements of the Fourteenth Amendment so that maintenance of the suit does not

offend 'traditional notions of fair play and substantial justice.'" *Response Rewards*, 189 F. Supp. 2d at 1335 (quoting *Structural Panels, Inc. v. Tex. Aluminum Indus., Inc.*, 814 F. Supp. 1058, 1064 (M.D. Fla. 1993)).  "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a non-resident defendant."  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

       1.     *Florida Courts Lack General Jurisdiction over Melaleuca*

The U.S. Supreme Court has recently clarified that a corporation is subject to general jurisdiction only in the state in which the corporation is incorporated, the state in which the corporation has its principal place of business, or the state in which the "corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  The Supreme Court explained that only in an "exceptional case" would "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [] be so substantial and of such a nature as to render the corporation at home in that State."  *Id.* at n.19.

In this case, the pleadings before the Court do not come close to establishing a prima facie case that Melaleuca's activities within Florida are so substantial as to render it essentially "at home" in this state and subject to suit on any claim.  It matters not that Melaleuca has some distributors in Florida and makes some sales in Florida.  *See Erwin v. Ford Motor Co.*, No. 8:16-cv-1322-T-24AEP, 2016 WL 7655398, at *11 (M.D. Fla. Aug. 31, 2016) (finding that plaintiff had not established an "exceptional case" warranting general jurisdiction over Ford Motor Company, despite the fact that Ford conducts a "large volume of business in the state of Florida," routinely ships vehicles into and advertises in Florida, and has numerous business relationships

with Ford dealerships in Florida).  Melaleuca is simply not "at home" in this State.  *See Daimler*, 571 U.S. at 139.  Accordingly, Plaintiff has not established a prima facie case of general jurisdiction over Melaleuca in Florida.

> 2.    *This Court Lacks Specific Jurisdiction over Melaleuca*

Likewise, Plaintiff has not established its prima facie case that Melaleuca is subject to specific jurisdiction here.  The Complaint fails to specific which provision of Florida's long-arm statute encompasses ***Melaleuca's*** conduct, as Plaintiff has instead chosen to focus arguing that "personal jurisdiction over the ***Distributor Defendants***" is proper because of their contracts with Plaintiff.  Compl. ¶ 19.  However, it appears that Plaintiff may be arguing that Florida's long-arm statute applies to Melaleuca because it permits jurisdiction to be asserted over nonresidents where the "cause of action aris[es] from . . . [c]ommitting a tortious act within this state."  Fla. Stat. § 48.193(1)(a)(2); *see also* Compl. ¶ 20.  This argument fails.

Crucially, the focus of the analysis for Florida's long-arm statute is "not on where a plaintiff ultimately felt damages, but where a defendant's tortious conduct occurred."  *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. 4th DCA 2013); *accord Rautenberg v. Falz*, 193 So. 3d 924, 930 (Fla. 2d DCA 2016).  If a complaint based on "statements or misstatements" fails to allege "either that the statements were made in the state or that they were directed at listeners who were located in the state," then the long-arm statute is inapplicable.  *PK Computers, Inc. v. Indep. Travel Agencies of Am.*, 656 So. 2d 254, 255 (Fla. 4th DCA 1995).

Here, the Complaint fails to allege that a single alleged misrepresentation or tortious act occurred in Florida.  As explained in the Background section *supra*, not one of the acts for which the Complaint pleads any degree of specificity is alleged to have occurred in Florida.  Compl. ¶¶ 48, 51, 52, 69, 71, 73, 74.  For the vast majority of these allegations, the Complaint actually

gives reason to believe they were made outside Florida.  For instance, Plaintiff complains of a

text message sent by Defendant Amber Hoerner, Compl. ¶ 51, but Ms. Hoerner is alleged to

reside in California, Compl. ¶ 6.  Plaintiff complains of alleged solicitations by Defendants

Ashley Olive and Brandon Olive, Compl. ¶¶ 69, 73, but the Olives are alleged to reside in Texas,

Compl. ¶¶ 9–10.  And while Plaintiff does provide a few scant allegations relating to one

Floridian, Geneveve Sykes, the Complaint does not allege that Ms. Sykes took a single action in

her home state.  *See* Compl. ¶¶ 48, 74.  More importantly, there is not a single allegation that

would tie *Melaleuca* to any conduct that occurred in Florida.  Melaleuca, as an Idaho corporation

with a principal place of business in Idaho, Compl. ¶ 3, is not alleged to have engaged in any

conduct at all in Florida.  Accordingly, Plaintiff has failed to establish its prima facie case.

     *3.  The Exercise of Jurisdiction over Melaleuca Would Not Comport with Due Process*

     Even if it is assumed, for purposes of argument, that Melaleuca is within the reach of

Florida's long-arm statute (which it is not), the Due Process Clause "imposes a more restrictive

requirement than does Florida's Long-Arm Statute."  *Melgarejo v. Pycsa Panama, S.A.*, 537 F.

App'x 852, 860 (11th Cir. 2013).  In specific personal jurisdiction cases, the courts are to apply a

three-part due process test, which examines: (1) whether the plaintiff's claims arise out of or

relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident

defendant purposefully availed itself of the privilege of conducting activities within the forum

state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of

personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Response Rewards*, 189 F. Supp. 2d at 1338–39.  The plaintiff bears the burden of establishing

the first two prongs, and if the plaintiff does so, the defendant must demonstrate that the exercise

of jurisdiction would violate traditional notions of fair play and substantial justice.  *Id.* at 1339.

a.     Prong One: "Arising Out of" or Relatedness

"[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (quoting *Oldfield*, 558 F.3d at 1222).  The inquiry "must focus on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984)).  "[A] relationship among the defendant, the forum, and the litigation is the essential foundation of in personam jurisdiction . . . ." *Helicopteros*, 466 U.S. at 414.

Here, the pleadings and evidence demonstrate that there is no direct causal relationship between the defendant, the forum, and the litigation.  Melaleuca is not alleged to have entered into any contract with Plaintiff.  Melaleuca is not alleged to have engaged in any conduct in Florida.  Plaintiff's vague and threadbare allegation that the Distributor Defendants acted "at the direction of Melaleuca, Compl. ¶ 48, must be disregarded for the purposes of the Court's personal jurisdiction analysis, *see Carruth v. Bentley*, 942 F.3d 1047, 1056 (11th Cir. 2019) (holding that the complaint's allegation that action was made "at the direction of" the defendants "must be disregarded" at the pleading stage under *Iqbal*); *infra* at 20–22.  Thus, Plaintiff has failed to allege with requisite specificity a single action by Melaleuca in Florida.

Moreover, not one of the events as to which Plaintiff has alleged any specificity with respect to the Distributor Defendants, Compl. ¶¶ 48, 51, 53, 69, 71, 74, is alleged to have occurred in Florida.  While four Distributor Defendants are alleged to be Florida residents, Compl. ¶¶ 12–13, 16–17, the overwhelming majority of the Defendants are not Floridians, Compl. ¶¶ 3–11, 14–15.  The only Distributor Defendant alleged to be a Florida resident that the Complaint provides any specifics for is Geneveve Sykes.  Yet, even with regard to Ms. Sykes,

the Complaint merely alleges that she held a "video conference," without linking the video to

conference to Florida in any way.  *See* Compl. ¶ 48.  But even assuming Ms. Sykes hosted the

video conference in Florida, an action in Florida cannot establish jurisdiction if it is not the

"'but-for' cause of the tort."  *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314-16 (11th Cir.

2018) (affirming dismissal of claim against defendant where the contacts relied upon to establish

jurisdiction alleged that defendant held a seminar in Florida, owned a manufacturing plant and

Florida, and made sales in Florida which "had nothing to do with the torts . . . allegedly

committed" in Florida); *Dean v. Easterling*, No. 3:19-cv-566-J-32JRK, 2020 WL 1665482, at *4

(M.D. Fla. Apr. 3, 2020) (holding that where Complaint "fail[ed] to allege that any specific

person or group in Florida viewed the [tortious online] post, resulting in harm to" the plaintiff the

allegations were merely conclusory and "not enough to give rise to jurisdiction under Florida's

long-arm statute").  Plaintiff cannot possibly believe that its case rests on the statements: "I don't

see It Works! lasting a couple more months from what I know"; or she "still had friends with It

Works! 'corporate' who told her to 'run.'"  Compl. ¶ 48.

At most, Plaintiff alleges that Melaleuca took certain unspecified actions from its Idaho

headquarters or, more accurately, failed to terminate certain distributors who live across the

country and who may have engaged in misconduct across the country.  There is no connection

whatsoever between Melaleuca and Florida, other than that Plaintiff is a Florida company and

Plaintiff has filed this lawsuit.  Accordingly, Plaintiff has failed to demonstrate that its claims

against Melaleuca arise out of or relate to Melaleuca's nonexistent contacts with Florida.

b.    Prong Two: Purposeful Availment

For purposeful availment, the court is to assess the nonresident defendant's contacts with

the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action;

(2) involve some act by which the defendant purposefully availed itself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court there.  *See Response Rewards*, 189 F. Supp. 2d at 1338.  Here, again, there is nothing in the Complaint suggesting that Melaleuca undertook an act by which it purposefully availed itself of the privilege of doing business in Florida.  The only allegation even hinting at purposeful availment is the vague and confusing allegation that Melaleuca somehow acted in concert with certain Florida-based independent contractors.

Vague, paltry and "threadbare assertions" are insufficient to establish personal jurisdiction over a defendant for due process purposes.  *See In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1325–26 (S.D. Fla. 2010) ("Courts will grant motions for lack of personal jurisdiction where the plaintiff makes only broadly-worded or vague allegations about a defendant's conduct.").  And "[v]ague and conclusory allegations do not satisfy" a plaintiff's burden to "make out a prima facie case of jurisdiction."  *Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 946 (11th Cir. 2018) (citation omitted); *see also In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1142–43 (S.D. Fla. 2019) (finding that in the absence of "specific facts" such "vague and conclusory allegations . . . [were] insufficient to establish a prima facie case of personal jurisdiction").  Even in cases where plaintiffs have alleged substantial business activity in Florida, including substantial business being conducted in a Florida district or constant contact with the state throughout the year, courts have declined to exercise personal jurisdiction absent specific allegations regarding the defendant's contacts.  *See Takata*, 396 F. Supp. 3d at 1142 (collecting cases); *Am. Registry, LLC v. Hanaw*, No. 2:13-cv-352-FtM-29CM, 2014 WL 12606501, at *8 (M.D. Fla. July 16, 2014) (dismissing complaint and holding "conclusory"

allegation that defendants "conduct business within this judicial district . . . cannot serve as the basis for personal jurisdiction").  Thus, Plaintiff has not and cannot meet this prong of the test.

c.      Prong Three: Fair Play and Substantial Justice

As shown above, Plaintiff has not met its burden with regard to the first two prongs of the due process analysis.  As a result, the Court need not decide whether the exercise of jurisdiction comports with fair play and substantial justice.  However, if the Court were to undertake such an analysis, the exercise of jurisdiction in this case would violate traditional notions of fair play and substantial justice.  In analyzing the third prong of the due process test, the Court is to look at the forum's interest in adjudicating the dispute, the Plaintiff's interest in obtaining convenient and effective relief, and the judicial system's interest in resolving the dispute.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Here, a majority of the Distributor Defendants are not Florida residents, and none of the actions that the Complaint alleges with specificity are reported to have occurred in Florida.  Compl. ¶¶ 3–11, 14–15; *see also supra* at 2–5.  Plaintiff is a company with distributors around the country, and Melaleuca is not alleged to have taken a single action in Florida.  This is not a Florida-specific case, and it would be improper to exercise jurisdiction over Melaleuca.  *See Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, 723 F. App'x 871, 876 (11th Cir. 2018) (holding that exercising personal jurisdiction "would violate traditional notions of fair play and substantial justice" where a state's interest in adjudicating the dispute is limited because much of the alleged misconduct "occurred outside of [the state]").  Thus, haling Melaleuca into court in Florida in this matter violates traditional notions of fair play and substantial justice.

4.    *Jurisdictional Discovery Is Not Warranted Here*

In addition, jurisdictional discovery is not warranted here.  As this Court has routinely explained, "[j]urisdictional discovery 'is not a vehicle for a fishing expedition in hopes that discovery will sustain the exercise of personal jurisdiction.'"  *Encore Select, Inc. v. Great Atl. & Pac. Tea Co.*, No. 8:14-cv-935, 2014 WL 2548176, at *1 (M.D. Fla. June 5, 2014) (quoting *Atlantis Hydrophonics, Inc. v. Int'l Growers Supply, Inc.*, 915 F. Supp. 2d 1365, 1380 (N.D. Ga. 2013)).  Moreover, where a Defendant's motion, like Melaleuca's motion here, is directed to Plaintiff's failure to make out a prima facie case and does not rely on affidavits outside the four corners of the complaint, jurisdictional discovery is properly denied.  *See Jessop v. Penn Nat'l Gaming, Inc.*, No. 6:18-cv-1741-Orl-37DCI, 2019 WL 960031, at *2 (M.D. Fla. Jan. 25, 2019) (rejecting plaintiff's "attempt to conduct a fishing expedition to uncover evidence to support Plaintiff's general allegation that the Court has personal jurisdiction over [Defendant]"); *Encore*, 2014 WL 2548176, at *1 (finding that jurisdictional discovery is inappropriate where defendant does not identify disputed facts within the Complaint).  Here, not a single allegation in the Complaint ties Melaleuca's conduct to Florida.  Because the Plaintiff's Complaint has not established a prima facie case for exercise of personal jurisdiction over Melaleuca, the Court should not allow Plaintiff to embark on a fishing expedition, and jurisdictional discovery is inappropriate.

## II.    12(b)(1) Motion:  This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims Because Plaintiff Is Required to Mediate and/or Arbitrate Them

## A.    Legal Standard

Under the FAA, "courts must rigorously enforce arbitration agreements according to their terms."  *Bey v. XPO Logistics, Inc.*, No. 6:16-cv-2195-Orl-37KRS, 2017 WL 3923030, at *2 (M.D. Fla. Sept. 7, 2017) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233

(2013)).  If requested by a party, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  An agreement to arbitrate is "presumptively valid and enforceable."  *Bey*, 2017 WL 3923030, at *2.

Motions to enforce arbitration clauses in private contracts are treated as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), which of course, must be resolved before the case proceeds to discovery.  *See MRI Scan Center, LLC v. National Imaging Associates, Inc.*, No. 13-cv-60051, 2013 WL 1899689, at *2 (S.D. Fla., May 7, 2013) ("[C]ourts generally treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)."); *see also Ruhrgas*, 526 U.S. at 577 (citing "a long and venerable line of our cases" that hold that "[t]he requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception . . . for [j]urisdiction is power to declare the law, and [w]ithout jurisdiction the court cannot proceed at all in any cause").

**B.    Argument**

Plaintiff's claims are barred by the mandatory mediation and/or arbitration provisions found in the Distributor Agreement.[2]  *See* Dist. Agt. §§ 8.3, 8.4.  Under Florida law, if an arbitration provision is clear and unambiguous, a court must interpret the contract in accordance with the plain meaning, and to the extent ambiguity exists, an arbitration clause with "an expansive provision, encompassing 'any controversy or claim between [the parties] arising out of or relating to' the agreement" will be interpreted in favor of arbitration.  *Terminix Int'l Co., LP v. Ponzio*, 693 So. 2d 104, 108 (Fla. 5th DCA 1997).  A non-signatory to an arbitration agreement is permitted to compel arbitration.  *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. 1st DCA 2004) (noting that non-signatory can compel arbitration "when the signatory's claims allege

---

[2] Melaleuca understands that the Distributor Defendants will file a motion to stay the proceedings and to compel arbitration or dismiss.  Melaleuca intends to adopt and join in that motion.

substantially interdependent and concerted misconduct by the signatory and the non-signatory or when the claims relate directly to the contract and the signatory is relying on the contract to assert its claims against the non-signatory.")

Here, the plain text of the Distributor Agreement unambiguously and broadly provides for arbitration of "any controversy or claim arising out of or relating to the Agreement, or the breach thereof."  Dist. Agt. § 8.4; *see also Gray v. Ace Am. Ins. Co*., No. 8:18-cv-2912-T-02JSS, 2019 WL 2053618, at *2 (M.D. Fla. May 9, 2019) ("The Court finds the language is clear — the parties intended to arbitrate 'any controversy or claim . . . arising out of or related to this policy.'").  Additionally, the Distributor Agreement provides that "[f]or any dispute involving $10,000 or more, prior to instituting any arbitration as provided in Section 8.4 . . . the parties shall meet in good faith and attempt to resolve any dispute arising from or relating to the Agreement through non-binding mediation."  Dist. Agt. § 8.3.

The only exception to these mandatory dispute provisions relates to actions **to protect intellectual property** (i.e., not to enforce non-solicitation provisions) that are solely equitable, where Plaintiff, after mediation, is authorized to seek injunctive relief.  Even so, Plaintiff must first attempt to mediate its claims, and then may pursue damages claims in arbitration, *not litigation*.  *See id.* § 8.4.  Plaintiff cannot contest the applicability of these provisions, given that Plaintiff has brought breach of contract actions, Compl. ¶¶ 76–109; ties its tortious interference claim to the Distributor Defendants' "entry of the Agreements," Compl. ¶ 113; ties its Lanham Act claim to the Distributor Defendants' alleged attempts "to induce It Works! distributors to breach their Agreements," Compl. ¶ 122; and ties its trade secret misappropriation claims to the confidentiality provisions in the Distributor Agreement, Compl. ¶¶ 128, 139.  The only claims

arguably not subject to arbitration — Plaintiff's trade secret claims for injunctive relief (but not for damages) — fail under Rule 12(b)(6).  *See infra*.

If the Court has any uncertainty about the scope of the arbitration provision here, the case must be stayed and the question of arbitral jurisdiction *must* be submitted to the arbitrator. Specifically, the Distributor Agreement invokes "the AAA's Commercial Arbitration Rules and Mediation Procedures."  Dist. Agt. § 8.4.  Rule 7(a) of those rules provides "[t]he arbitrator shall have the power to rule on his or her own jurisdiction," and as the Eleventh Circuit has explained, "[w]here the parties expressly incorporate the AAA rules into an arbitration provision, 'this alone serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator.'" *WasteCare Corp. v. Harmony Enters., Inc.*, --- F. App'x ---, No. 19-12066, 2020 WL 4218025, at *3–4 (11th Cir. July 23, 2020).  Because Counts II–VII all "demand[] judgment . . . for damages" arising out of or relating to the Distributor Agreement, *see* Compl, ¶¶ 103, 109, 117, 125, 136, 147, these causes of action must be dismissed in favor of the Distributor Agreement's mandatory mediation and/or arbitration provisions.

## III.    Rule 12(b)(6) Motion to Dismiss:  Plaintiff Has Failed To State A Claim Upon Which Relief May Be Granted

## A.    Legal Standard

To avoid dismissal under Rule 12(b)(6), Plaintiff's Complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Further, "[d]ismissal is . . . permitted 'when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of

action.'"  *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (quoting *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993)).

In reviewing the sufficiency of the Complaint under this standard, the Court accepts its factual allegations as true.  *Id.*  However, it must not accept as true "legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678; *id.* at 679 ("[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth."); *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").  If the Complaint fails to provide specific facts to support the claims, Plaintiff has not made the necessary "showing" required by Rule , and its claims must be dismissed.  *Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible.").

## B.    Argument

While the Court's lack of jurisdiction over Melaleuca should prevent the Court from proceeding to Melaleuca's Rule 12(b)(6) motion, the Court should dismiss all Plaintiff's claims against Melaleuca in any event.  Plaintiff has alleged five causes of action against Melaleuca, none of which states a claim.  First, Plaintiff's breach of contract action (Count I) fails because Melaleuca never entered into a contract with Plaintiff.  Second, Plaintiff's false advertising claim (Count V) fails because Plaintiff has not satisfied the required heightened pleading standard and has not alleged the "who, what, when, where, or how" with respect to Plaintiff's claim that the alleged misrepresentations in the Complaint were made "at the direction of Melaleuca"; indeed, Plaintiff has not even satisfied the lesser Rule 8(a) standard.  Compl. ¶ 48.  Third, Plaintiff's

tortious interference action (Count IV) fails because the Complaint does not allege any direct tortious interference by Melaleuca.  Lastly, Plaintiff's federal and Florida trade secret misappropriation claims (Counts VI and VII) fail because Plaintiff has not described its trade secrets with reasonable particularity.

    *1.*    *Melaleuca Never Entered into a Contract with Plaintiff*

Incredibly, Plaintiff purports to bring a breach of contract claim (Count I) against Melaleuca, notwithstanding that Melaleuca — which is alleged to be one of Plaintiff's competitors, Compl. ¶ 1 — never entered into any contract with Plaintiff, let alone the "Agreements" at issue in the Complaint.  The sine qua non of a breach of contract claim is that the Defendant actually entered into a contract with the Plaintiff.  *See Am. Registry, LLC v. Hanaw*, No. 2:13-cv-352-FtM-29UAM, 2013 WL 6332971, at *2 (M.D. Fla. Dec. 5, 2013) ("A claim for breach of contract under Florida law requires proof of three elements: (1) the existence of a valid contract; (2) a material breach; and (3) damages.").

Plaintiff does not allege that Melaleuca signed any such Agreements, nor did it.  These Agreements are for Plaintiff's distributors, not Melaleuca.  *See, e.g.*, Dist. Agt. ¶ I.1 ("I understand that ***as an Independent Distributor ('Distributor') for It Works Marketing*** . . . ." (emphasis added)).  Because Melaleuca and Plaintiff did not enter into any contract with one another, the breach of contract claim must fail.  *See Am. Registry*, 2013 WL 6332971, at *2.

    *2.*    *Plaintiff Has Not Alleged Any Specificity to Support Its False Advertising Claim*

Plaintiff's false advertising claim fares no better.  Notwithstanding Rule 9(b)'s clear language dictating that "a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), district courts are divided on whether Rule 9(b)'s heightened pleading requirement applies to claims under the Lanham Act that are grounded in fraud.  *Global*

*Tech LED, LLC v. Hilumz Int'l Corp.*, No. 2:15-cv-553-FtM-29CM, 2016 WL 3059390, at *2 n.1 (M.D. Fla. May 31, 2016) ("Some courts apply Rule 9(b)'s heightened pleading requirements to determine the sufficiency of a Lanham Act claim 'grounded in fraud.'") (citation omitted). Florida courts, however, have made clear that "'[m]isleading advertising is a particularized form of fraud'" and that "[a]s such, a false advertising claim is subject to the heightened pleading requirements as set forth in Rule 9(b)." *Solution Z v. Alma Lasers, Inc.*, No. 11-cv-21396, 2012 WL 13012765, at *4 (S.D. Fla. Jan. 25, 2012) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 877 (Fla. 2d DCA 2006)). Accordingly, this Court should require Plaintiff to plead its false advertising claim with the specificity required by Rule 9(b), which means that Plaintiff must allege "particular facts about 'the who, what, where, when, and how'" of the fraud. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1052 (11th Cir. 2015).

Even if Plaintiff's claim were not subject to Rule 9(b), Plaintiff would still be required to provide plausible factual allegations to support its claims, as opposed to threadbare legal conclusions. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) ("[T]o nudge the claim across the line, the complaint must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Importantly, the Eleventh Circuit has previously held that an allegation that an individual acted "***at the direction of***" a defendant is "strikingly similar" to the allegations disregarded in *Iqbal* and, thus, the Court "need not and indeed cannot take it as true." *Carruth*, 942 F.3d at 1056 (emphasis added).

Under either Rule 9(b) or the *Iqbal-Twombly* Rule 8 pleading standard, the Complaint fails to state a claim against Melaleuca.  Under Rule 9(b), the Complaint clearly fails to explain the who, what, when, where, or how of any of Melaleuca's purported actions.  Indeed, the few allegations actually made concerning Melaleuca demonstrate the *implausibility* of any misconduct by Melaleuca.  As the Complaint explains, Melaleuca has strong "Policies and Procedures" against misconduct.  *See* Compl. ¶ 60 ("Section 32 of the Melaleuca Policies and Procedures provides: . . . Marketing Executives are prohibited from making false, misleading or inaccurate claims about their or other persons' compensation received under the Compensation Plan.").  The Complaint also cites a Melaleuca publication that is incorporated into Melaleuca's Policies and Procedures and that prohibits distributors from making "any public mention or post[ing] copies of checks from Melaleuca."  Compl. ¶ 65.  Ironically, the Complaint recognizes that "[c]learly Melaleuca understands the importance of abiding by its policies and procedures." Compl. ¶ 61.  The Complaint even quotes Melaleuca's CEO as emphasizing the importance of compliance with Melaleuca's Policies and Procedures and noting that this is "one thing we can't afford to mess around with."  Compl. ¶ 62.

Rule 9(b) requires Plaintiff to have identified who at Melaleuca directed the allegations in the Complaint, how they did so, and when and where they did so.  *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d at 1052 ("[T]o satisfy Rule 9(b)'s heightened-pleading requirements, [plaintiff] must allege the 'actual presentment of a claim . . . with particularity,' meaning particular facts about the 'who,' 'what,' 'where,' 'when,' and 'how' . . . .") (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005)).  Plaintiff does not even come close to that standard.

Even interpreting the allegations under the liberal Rule 8 standard, the Complaint does not include a single allegation that would support Plaintiff's threadbare allegation that Plaintiff

"*believes* that *at the direction of Melaleuca*" the Distributor Defendants made certain alleged

misrepresentations and solicited It Works! distributors.  Compl. ¶ 48 (emphasis added).  After

setting aside the Complaint's threadbare allegation that the Distributor Defendants' alleged

misconduct was done "at the direction of Melaleuca," *see Carruth*, 942 F.3d at 1056 (rejecting

allegation under Rule 8(a) that conduct occurred "at the direction of" a defendant), the

Complaint leaves the Court with only one conclusion: the alleged misconduct, if it occurred, was

prohibited by Melaleuca policy, Compl. ¶¶ 60, 65, and Melaleuca mandates compliance with its

policy, Compl. ¶¶ 61–62.[3]  Indeed, the allegations in the Complaint referencing Melaleuca's

strict policies and acute awareness of these issues make it *less plausible*, not more, that

Melaleuca engaged in misconduct.  Under either Rule 8(a) or Rule 9(b), Plaintiff's false

advertising claim must be dismissed.

> 3.    *Plaintiff Has Not Alleged Any Direct Conduct by Melaleuca to Support a Tortious Interference Claim*

Plaintiff's tortious interference claim suffers from an obvious and fatal flaw: the

Complaint does not allege a single direct action by Melaleuca that would constitute tortious

interference.  Florida law provides that an "essential element" of a claim for tortious interference

is "that the interference be both *direct* and intentional."  *Lawler v. Eugene Wuesthoff Mem'l

Hosp. Ass'n*, 497 So. 2d 1261, 1263 (Fla. 5th DCA 1986) (emphasis added); *accord Rosa v. Fla.

Coast Bank*, 484 So. 2d 57, 58 (Fla. 4th DCA 1986); 32 Fla. Jur. 2d Interference § 6 (2020).  If a

plaintiff fails to allege that a defendant "attempted to interfere *directly* with the [business]

relationship," then a tortious interference claim must fail.  *Ethyl Corp. v. Balter*, 386 So. 2d

1220, 1223 (Fla. 3d DCA 1980) (directing trial court to enter judgment in appellant's favor

---

[3] As an initial matter, Melaleuca owes no duty to Plaintiff to comply with its own internal policies, and even a clear violation of Melaleuca's policies would not itself create a cause of action for Plaintiff.

where "there was a total lack of proof of a direct interference . . . indispensable to the existence of an actionable wrong); *see also Astro Tel, Inc. v. Verizon Fla., LLC*, 979 F. Supp. 2d 1284, 1297 (M.D. Fla. 2013) ("To be actionable, 'the interference must be direct; . . . .'" (quoting *Williamson v. Sacred Heart Hosp.*, No. 89-30084, 1993 WL 543002, at *51 (N.D. Fla. May 28, 1993)));  *US & UK Med. Abroad, LLC v. World Access Serv. Corp.*, No. 10-cv-24062, 2011 WL 13223531, at *4 (S.D. Fla. Feb. 18, 2011) (dismissing tortious interference claim where plaintiff "only alleg[ed] facts about how the *other* defendants acted to interfere," but "no facts" about how the moving defendant acted directly towards plaintiff); *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Machine Sys. U.S.A., Inc.*, No. 04-60861, 2005 WL 975773, at *7 (S.D. Fla. Mar. 4, 2005) (dismissing claim of tortious interference because plaintiff "must allege (and prove) that opposing party ***directly*** interfered" with the business relationships and party failed to do so).

Here, Plaintiff's tortious interference claim focuses on the Distributor Defendants' alleged solicitation of It Works! distributors and customers.[4]  Compl. ¶ 112.  At most, the Complaint alleges that certain Distributor Defendants engaged in alleged misconduct by violating anti-solicitation provisions.  While the Complaint includes a threadbare allegation that these solicitations were made "at the direction of Melaleuca," Compl. ¶ 48, that allegation is not entitled to deference under Rule 8(a).  *See Carruth*, 942 F.3d at 1056 (holding that allegation that action was made "at the direction of" the defendants "must be disregarded" at pleading stage

---

[4] For good reason, Plaintiff does not appear to tie its tortious interference claim to its allegations of trade secret misappropriations.  To the extent Plaintiff's claim of tortious interference claim is based on the same allegations supporting its claim for trade secret misappropriation, the tort claim is preempted under the Florida Uniform Trade Secret Act ("FUTSA").  *See Am. Registry*, 2013 WL 6332971, at *7.  Specifically, FUTSA provides that the provisions of the Act "displace conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret."  Fla. Stat. § 688.008(1).  Thus, "a plaintiff's separate tort claim is preempted by FUTSA if there is no 'material distinction' between the plaintiff's FUTSA claim and the other allegation."  *Gonzalez-Hernandez v. Orbay*, No. 08-cv-21782, 2009 WL 10668626, at *2 (S.D. Fla. Jan. 15, 2009).

under *Iqbal*).  Accordingly, in the absence of any ***direct*** conduct by Melaleuca, Plaintiff's tortious interference claim must be dismissed.

### 4.      Plaintiff Has Not Identified Its Trade Secrets with Reasonable Particularity

Plaintiff's federal and Florida state law claims for misappropriation of trade secrets (Counts VI and VII) fail because the Complaint does not describe the alleged trade secrets with reasonable particularity.  To state a claim for misappropriation of trade secrets, a plaintiff must show that "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated."  *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1338 (M.D. Fla. 2006).  The federal Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act "can be analyzed together."  *ActivEngage, Inc. v. Smith*, No. 6:19-CV-1638-ORL-37LRH, 2019 WL 5722049, at *3 (M.D. Fla. Nov. 5, 2019).

To state a claim for trade secret misappropriation, the plaintiff has the "burden to describe the alleged trade secret with reasonable particularity."  *Am Registry*, 2013 WL 6332971, at *4.  Florida courts do not hesitate to dismiss claims based on vague and general allegations. *See id.* (holding that "customer lists," "sales and operation procedures," "financial data," "sales and marketing strategies and data" were "broad and generic categories of information" that "provide insufficient notice as to the actual trade secrets misappropriated"); *VVIG, Inc. v. Alvarez*, No. 18-cv-23109, 2019 WL 5063441, at *4 (S.D. Fla. Oct. 9, 2019) ("General allegations of 'business affairs, products, marketing systems technology, customers, end users, financial affairs, accounting statistical data,' and certainly the catch-all 'all necessary know how' are insufficient.") (citations omitted); *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1287 (S.D. Fla. 2007) (dismissing claim where description of trade secrets was "extremely vague" and lacked "reasonable particularity").

Here, the Complaint fails to identify any trade secrets with reasonable particularity. Instead, it merely alleges disclosure of various items contained in Plaintiff's Downline Activity Reports and eSuite information, and it lumps together the alleged trade secrets with "confidential and proprietary information," defined collectively by the Plaintiff as "Confidential Information." Compl. ¶ 38; *see also VVIG*, 2019 WL 5063441, at \*4.  The broadly labeled term, "Confidential Information," is described by sweeping categories like "financial information," "downline distributors," "organizational structure information," and "business and marketing strategies." Compl. ¶ 38.  These descriptions are general, open-ended terms, and they fail to put Melaleuca on "notice as to the actual trade secrets misappropriated."  *Am. Registry*, 2013 WL 6332971, at \*3; *see also VVIG*, 2019 WL 5063441, at \*4 ("Couching specific terms within a sweeping definition is insufficient to state a trade secret claim because doing so fails to notify []Defendants *which* trade secret or secrets they allegedly misappropriated."); Compl. ¶ 38 ("including information concerning"), *id.* ¶ 42 ("[a]ll Downline Activity Reports and the information contained therein are . . . trade secrets").  Thus, Plaintiff has failed to identify its alleged trade secrets with reasonable particularity, and its trade secret claims must be dismissed.

## IV.    Conclusion

WHEREFORE, for the reasons stated above, Melaleuca respectfully requests that the Court grant its Motion to Dismiss.  The Court lacks personal jurisdiction over Melaleuca, and all claims against Melaleuca must accordingly be dismissed with prejudice.  In the alternative, the Court should compel arbitration of Plaintiff's claims.  In the further alternative, Plaintiff has failed to state a plausible claim for relief as to Melaleuca with respect to each claim brought against Melaleuca (Counts I, IV, V, VI, and VII), and those claims should be dismissed as to Melaleuca.

Dated: August 19, 2020

Respectfully submitted,

/s/ Douglas C. Dreier
Richard W. Smith (*pro hac vice*)
rwsmith@wiley.law
Douglas C. Dreier
ddreier@wiley.law
Florida Bar No. 104985
**WILEY REIN LLP**
1776 K Street NW
Washington, DC 20006
(202) 719-7000 (Tel)
(202) 719-7049 (Fax)

J. Andrew Law (*pro hac vice* forthcoming)
alaw@melaleuca.com
**MELALEUCA, INC.**
4609 W. 65th S.
Idaho Falls, ID 83402
(208) 522-0700 (Tel)
(208) 534-2063 (Fax)

*Counsel for Defendant Melaleuca, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2020, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to all Counsel of Record.

/s/ Douglas C. Dreier
Douglas C. Dreier