## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**It Works Marketing, Inc.,**

      **Plaintiff,**

**v.**                               **CASE NO. 8:20-cv-01743-TPB-TGW**

**Melaleuca Inc., Kimberly Bertolucci a/k/a
Kimberly McCauley, Katie Herold,
Amber Hoerner, Kellie Kaufman,
Jeanie McWhorter, Ashley Olive,
Brandon Olive, Lea Piccoli,
Sarah Rankin, Joshua Rankin,
Makenzie Schultz, Steven Schultz,
Geneveve Sykes, and Sean Sykes,**

      **Defendants.**
_____/

## AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, It Works Marketing, Inc. ("It Works!"), sues Defendants, Melaleuca Inc. ("Melaleuca"), and Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes, and Sean Sykes (the "Distributor Defendants"), and alleges:

## INTRODUCTION

1.      It Works! is a direct sales company that markets its goods and services, primarily high-quality health and beauty products, through independent distributors.  It Works! brings this action against certain former It Works! distributors—the Distributor Defendants—and their current direct sales company—Defendant Melaleuca, a competitor of It Works!.  Together, the Distributor Defendants and Melaleuca have orchestrated and are perpetrating an unlawful scheme

to illegally recruit current It Works! distributors, procure the distributors' resignations from It Works!, and have them join Melaleuca to sell its competing products, in violation of the Distributor Defendants' contractual agreements with It Works! and all in an illicit attempt to sabotage and destroy It Works!.  Specifically, the Distributor Defendants—all of whom had access to and received It Works!' confidential, proprietary, and trade secret information during their tenure with It Works!— have violated and are now violating (i) the non-solicitation and non-disclosure obligations in their agreements with It Works!, (ii) Melaleuca's own policies and procedures, and (iii) federal and state law.  Melaleuca has encouraged, aided, abetted, and directed the Distributor Defendants to breach their contractual agreements, and has committed and is committing other tortious acts against It Works!, also in violation of federal and state law.  As a result, It Works! seeks injunctive relief to prohibit the Defendants' wrongful conduct, and as to Melaleuca, damages arising from that conduct.[1]

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff, It Works Marketing, Inc., is a Florida corporation with its principal place of business and headquarters in Palmetto, Manatee County, Florida.  It Works! was founded in 2001, and through its passionate sales force and relentless focus on innovation and quality, has grown to become a global provider of high-quality health and beauty products.

3.      Defendant, Melaleuca Inc., is upon information and belief an Idaho corporation with its principal place of business and headquarters in Idaho Falls, Idaho.  On information and belief, Melaleuca has previously been investigated by the Florida Attorney General, and has held conventions or annual meetings in the State of Florida.

---

[1] This Amended Complaint does not include It Works!' claims for damages against the Distributor Defendants but It Works! remains confident in them and intends to pursue those claims in arbitration.  *See* Ex. 1, Terms & Conditions § 13; *id.* Policies and Procedures § 8.4.

4.      Melaleuca has thousands of distributors across the United States, and is a competitor of It Works!.

5.      On information and belief, Melaleuca conducts a large volume of business in Florida, routinely ships its products to Florida, is registered to pay sales tax in Florida, has thousands of clients in Florida, gleans a substantial percentage of its overall revenue from Florida residents, and directs advertisements to Florida residents.

6.      Defendant, Kimberly Bertolucci a/k/a Kimberly McCauley, is upon information and belief a citizen and resident of California.  Ms. McCauley was an It Works! distributor from July 27, 2018 through September 25, 2019.

7.      Defendant, Katie Herold, is upon information and belief a citizen and resident of Ohio.  Ms. Herold became an It Works! distributor on May 21, 2013 and resigned on July 22, 2020.

8.      Defendant, Amber Hoerner, is upon information and belief a citizen and resident of California.  Ms. Hoerner joined It Works! as a distributor on June 1, 2014 and resigned on October 1, 2018.

9.      Defendant, Kellie Kaufman, is upon information and belief a citizen and resident of Washington.  Ms. Kaufman became an It Works! distributor on January 27, 2012 and resigned on April 15, 2020.

10.      Defendant, Jeanie McWhorter, is upon information and belief a citizen and resident of Georgia.  Ms. McWhorter joined It Works! as a distributor on January 11, 2015 and resigned on or about August 29, 2018.

11.      Defendant, Ashley Olive, is upon information and belief a citizen and resident of Texas.  Ms. Olive was an It Works! distributor from June 29, 2014 through August 18, 2018.

12.     Defendant, Brandon Olive, is upon information and belief a citizen and resident of Texas.  Mr. Olive was an It Works! distributor from July 31, 2014 through August 18, 2018.

13.     Defendant, Lea Piccoli, is upon information and belief a citizen and resident of New Jersey.  Ms. Piccoli was an It Works distributor from September 7, 2014 through July 23, 2020.

14.     Defendant, Sarah Rankin, is upon information and belief a citizen and resident of Florida.  Ms. Rankin joined It Works! as a distributor on July 8, 2010 and resigned on July 21, 2020.

15.     Defendant, Joshua Rankin, is upon information and belief a citizen and resident of Florida.  Mr. Rankin joined It Works! as a distributor on July 18, 2010 and resigned on July 21, 2020.

16.     Defendant, Makenzie Schultz, is upon information and belief a citizen and resident of Iowa.  Ms. Schultz was an It Works! distributor from April 2, 2013 through August 18, 2018.

17.     Defendant, Steven Schultz, is upon information and belief a citizen and resident of Iowa.  Mr. Schultz was an It Works! distributor from May 5, 2013 through August 18, 2018.

18.     Defendant, Geneveve Sykes, is upon information and belief a citizen and resident of Florida.   Ms. Sykes became an It Works! distributor on October 14, 2014 and resigned on November 27, 2018.

19.     Defendant, Sean Sykes, is upon information and belief a citizen and resident of Florida. Mr. Sykes became an It Works! distributor on May 3, 2016 and resigned on November 27, 2018.

20.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including The Lanham Act, 15 U.S.C. § 1051 *et seq*., and The Defend Trade Secrets Act 18 U.S.C. § 1836 *et seq.,* and has supplemental

jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims in this action because they are so related to the claims over which the Court has original jurisdiction that they form part of the same case or controversy.

21.     The Court has personal jurisdiction over the Distributor Defendants because, in Section 14 of the It Works! Distributor Agreement Terms & Conditions (described below), they have submitted themselves to the jurisdiction of this Court, and has personal jurisdiction over all of the Defendants pursuant to Section 48.193, Florida Statutes.

22.     The Defendants, among other things:

(a)     operate, conduct, engage in, or carry on a business or business venture in this state, including having an office or agency in Florida;

(b)     committed and continue to commit tortious acts within Florida;

(c)     breached and continue to breach a contract in Florida by failing to perform acts required by the contract to be performed in this state; and

(e)     have engaged in substantial and not isolated activity within Florida, whether wholly interstate, intrastate, or otherwise.

23.     Indeed, Defendant Melaleuca has participated in tortious conduct in Florida, directed that specific acts be performed in Florida, and engaged in tortious acts aimed at Florida, including using and disclosing It Works!' confidential and trade secret information that was created in Florida and the use and disclosure of which affects It Works! in Florida.

24.     The Distributor Defendants electronically signed the agreements between It Works! and the Distributor Defendants that are a subject of this Complaint.  The Distributor Defendants who are not citizens and residents of Florida made visits to It Works! headquarters in Florida and/or to It Works! meetings and events in Florida in connection with their business activities with

It Works!.   The Distributor Defendants also regularly and routinely made telephone calls and transmitted electronic messages and other communications to It Works! in Florida.

25.    The Distributor Defendants received substantial economic benefits from their business activities with It Works! in Florida, and Melaleuca has received substantial economic benefits from its business activities with certain Distributor Defendants in Florida and otherwise from its business activities in Florida.

26.    Melaleuca and the Distributor Defendants have caused and continue to cause It Works! substantial harm and economic damages in Florida as discussed in this Complaint.

27.    Venue is proper in this district as to the Distributor Defendants because, in Section 14 of the It Works! Distributor Agreement Terms & Conditions (described below), they agreed to venue in this district, and venue is proper in this district as to all of the Defendants pursuant to 28 U.S.C. § 1391.

28.    All conditions precedent to this action have occurred, have been satisfied, or are waived.

29.    It Works! has retained the law firms of Shumaker, Loop & Kendrick, LLP and Winston & Strawn, LLP, and is obligated to pay reasonable attorneys' fees and costs for its services in this matter.

## **BACKGROUND**

### **The It Works! Distributor Agreement**

30.    As a requirement to become an It Works! distributor, each of the Distributor Defendants entered into a contract with It Works! that includes the It Works! Distributor Agreement (Terms and Conditions), the It Works! Policies and Procedures, and the It Works!

Compensation Plan (collectively the "Agreement") which defines and governs the relationship between It Works! and its distributors.  A copy of the Agreement is attached as Exhibit 1.

31.    It Works distributors are required to electronically review, acknowledge, and consent to the Agreement as part of becoming a distributor.  Additionally, each time there is a substantive update to the Agreement, It Works distributors undergo a "force read" where the distributors are again required to review, acknowledge, and consent to the terms of the Agreement. Each of the Distributor Defendants in this case did, in fact, electronically acknowledge and consent to the Agreement.

32.    The term of the Agreement is one year, and each of the Distributor Defendants renewed their Agreement with It Works! annually during their tenures as It Works! distributors. *See* Exhibit 1, *Policies and Procedures* § 2.4.

33.    By entering into and annually renewing their Agreements with It Works!, the Distributor Defendants agreed to comply with all of the terms and conditions set forth in the Agreement (including all amendments or modifications that It Works! elected to make from time to time in its sole and absolute discretion) as well as all federal, state, and local laws governing their business and their conduct.  *See* Exhibit 1, *Policies and Procedures* §§ 1.2 & 1.3.

34.    The Agreement gave the Distributor Defendants valuable rights in connection with their It Works! distributorships including, without limitation: to be compensated pursuant to the terms of the It Works! Compensation Plan, to promote the sale of It Works! product lines, to recruit distributors and customers throughout the United States and nineteen international markets, and to attend world class leadership training and corporate events.

### The Distributor Defendants' Non-Compete Obligations

35.     The Agreement is not an exclusive arrangement.  It Works! distributors are free to participate in other non-competing multilevel or network marketing business ventures or marketing opportunities (collectively "network marketing").  *See* Exhibit 1, *Policies and Procedures* § 3.9.1.

36.     However, in the Agreement all It Works! distributors agree—and the Distributor Defendants agreed—that as It Works! distributors they "must not sell, or attempt to sell, any competing non-It Works! programs, products or services."  *See* Exhibit 1, *Policies and Procedures* § 3.9.2.[2]

37.     In addition, the Distributor Defendants agreed not to use certain confidential information and trade secrets of It Works!—Downline Activity Reports and eSuite (described below)—"to compete with It Works!."  *Id.* § 3.9.4(c).

### The Distributor Defendants' Non-Solicitation Obligations

38.     Although they were free to participate in other non-competing network marketing businesses or opportunities, in their Agreements the Distributor Defendants agreed, among other things, not to solicit It Works! distributors or customers for other network marketing businesses during the term of their Agreements and for six months thereafter.  *See* Exhibit 1, *Policies and Procedures* § 3.9.1.

39.     Specifically as to non-solicitation, It Works! distributors may not directly or indirectly recruit other It Works! distributors or customers for any other network marketing

---

[2] The Agreement defines a competing program as "[a]ny program, product or service that is offered through network marketing or multi-level marketing in the same generic categories as It Works! products or services . . ., regardless of differences in cost, quality, or other distinguishing factors."  *Policies and Procedures* § 3.9.2.

business while they are It Works! distributors and for a period of six (6) calendar months thereafter. *See* Exhibit 1, *Policies and Procedures* § 3.9.1.[3]

40.     The Agreement defines "recruit" to include "the actual or attempted sponsorship, solicitation, enrollment, encouragement, or effort to influence in any other way, either directly, indirectly, or through a third party, another It Works! Distributor or Loyal Customer to enroll or participate in another multilevel marketing, network marketing or direct sales opportunity" including in response to inquiry made by another It Works! distributor or by announcement on social media.  *See* Exhibit 1, *Policies and Procedures* § 3.9.1.

41.     The Agreement tethers the Distributor Defendants' non-solicitation obligations to the protection of It Works!' intellectual property rights, customer and distributor lists, trade secrets, and confidential information, prohibiting distributors from utilizing Downline Activity Reports and eSuite (described below) to "[r]ecruit or solicit any Distributor or Customer."  *Id.* § 3.9.4(d).

### The Distributor Defendants' Access to It Works!' Confidential Information and Their Non-Disclosure Obligations

42.     As It Works! distributors, the Distributor Defendants had access to and utilized It Works!' confidential information, including but not limited to Downline Activity Reports— information regarding the sales activity, revenue, and income generated by each of the It Works! distributors who were personally sponsored (enrolled as It Works! distributors) by the Distributor Defendants as well as the sales activity, revenue, and income generated by other distributors who were part of their downline organization, including those It Works! distributors' downline activity—as well as to It Works!' eSuite of proprietary financial and operational information.  The

---

[3] The post-term non-solicitation provision in the Agreement includes a limited exception whereby a former It Works! distributor may recruit for another network marketing business only those It Works! distributors personally sponsored (enrolled as distributors) by the former It Works! distributor.

Downline Activity Reports and eSuite are and contain confidential, proprietary, and trade secret information ("Confidential Information") owned by It Works!, including information concerning:

    (a)    proposed products and services;

    (b)    financial affairs;

    (c)    actual and potential customers and customer information;

    (d)    downline distributors;

    (e)    organizational matters;

    (f)    business and marketing strategies;

    (g)    business operations, methodologies, and practices;

    (h)    sourcing terms and companies utilized; and

    (i)    hardware, operating systems, and infrastructure.

43.    The Confidential Information was developed and is maintained in Florida.

44.    It Works!' Confidential Information affords it a competitive advantage over other direct sales companies, and the continued confidentiality of such Confidential Information is essential to It Works!' viability.

45.    The Confidential Information derives economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure and use.

46.    Furthermore, the Confidential Information is the subject of efforts by It Works! that are reasonable under the circumstances to maintain its secrecy, including but not limited to, protecting this information with passwords; restricting access to such information and requiring It Works! distributors, such as the Distributor Defendants, to agree to confidentiality provisions within the Agreement; and sending letters to distributors upon resignation or cancellation of their

accounts to remind them of their obligations under the Agreement and to request the immediate return of all copies of Downline Activity Reports and other confidential and trade secret information in their possession.

47.     In particular, the Distributor Defendants agreed that '[a]ll Downline Activity Reports and the information contained therein are confidential and constitute proprietary information and business trade secrets belonging to It Works!" and that "but for [their] agreement of confidentiality and nondisclosure, It Works! would not provide Downline Activity Reports to the [Distributor Defendants]."  *See* Exhibit 1, *Policies and Procedures* § 3.9.4.

48.     Each Distributor Defendant also agreed that he or she:

[S]hall not, on his or her own behalf, or on behalf of any other person or entity:

a)     Directly or indirectly use or disclose any information contained in any Downline Activity Report or in eSuite to any third party;

b)     Directly or indirectly disclose the password or other access code to his or her eSuite;

c)     Use the information contained in any Downline Activity Report or eSuite to compete with It Works! or for any purpose other than managing or supporting his or her It Works! business; or

d)     Recruit or solicit any Distributor or Customer listed on any Downline Activity Report or in eSuite, or in any manner attempt to influence or induce any Distributor or Customer to alter their business relationship with It Works!.

*See* Exhibit 1, *Policies and Procedures* § 3.9.4.

49.     The Distributor Defendants further agreed that upon It Works!' demand (to any current or former It Works! distributor), they would return the original and all copies of Downline Activity Reports or other information to It Works!.  As such, the confidentiality provision survives the expiration or termination of the Agreement.  *See* Exhibit 1, *Policies and Procedures* § 3.9.4.

50.     It Works! provided the Distributor Defendants access to the Confidential Information because they executed the Agreement, which prohibits the disclosure of Confidential

Information and the Distributor Defendants' use of the Confidential Information to compete with It Works! and to solicit its distributors and customers.  It Works! would not have disclosed this information to the Distributor Defendants without these protections.  Indeed, these restrictions exist to protect It Works!' confidential and trade secret information, including its Downline Activity Reports and eSuite.

### It Works! Learns of the Distributor Defendants and Melaleuca's Unlawful Scheme To Recruit It Works! Distributors

51.    In or around July, 2020, It Works! learned that Melaleuca and the Distributor Defendants were acting in active concert and participation to perpetrate a brazen and unlawful scheme specifically designed to target current It Works! distributors and encourage them to break their Agreements with It Works! and become distributors for Melaleuca.

52.    Melaleuca is targeting It Works! distributors, including but not limited to the Distributor Defendants, because they possess It Works!' confidential and trade secret information, including Downline Activity Reports and eSuite.  Specifically, on information and belief, Melaleuca seeks to utilize It Works! distributors' knowledge of the profitability of other It Works! distributors, including their income and annual sales, to determine which It Works! distributors to recruit to sell Melaleuca's products instead.

53.    That Melaleuca is utilizing this information is demonstrated by the fact that several of the Distributor Defendants were highly profitable members of the It Works! organization.  On information and belief, Melaleuca's recruitment of It Works! most profitable distributors is not happenstance, but is the result of a targeted campaign informed by the confidential and trade secret information Melaleuca obtained from other Distributor Defendants.  On information and belief, Melaleuca is using It Works!' confidential and trade secret information, including the information

contained in Downline Activity Reports and eSuite, to successfully recruit them utilizing the misleading and deceptive recruiting tactics described herein.

54.     Also on information and belief, Melaleuca has already used It Works! confidential and trade secret information to recruit several of the Distributor Defendants, including the Rankins and the Sykeses.

55.     In some cases, the Distributor Defendants peddled misleading claims about their success with Melaleuca while encouraging It Works! distributors to not only break their own Agreements, but also to solicit other current It Works! distributors to move to Melaleuca and shirk their contractual obligations to It Works! as well.

56.     For example, Defendant Kaufman posted on her Facebook page that she had resigned from her previous company and that she then, today, "opened this." *See* Exhibit 2, Kaufman Facebook Post.  The image underneath the text of Kaufman's post reflects the amount of income that Kaufman claims she is receiving from Melaleuca in an effort to unlawfully recruit It Works! distributors. Additionally, on May 7, 2020, Kaufman also posted about her new job on her public Facebook account. Both of the above public-facing posts were done after Kaufman received a warning letter from It Works! reminding her of her contractual obligations, which was sent on April 27, 2020.  These posts were received by, and were directed to, then-current It Works! distributors that Kaufman did not personally sponsor and were posted on websites accessible to Florida residents.

57.     On June 18 and July 12, 2020, Kaufman made additional Facebook posts promoting her new relationship with Melaleuca, including thanking other Distributor Defendants Ashley Olive and Makenzie Schultz.  These posts reached then-current (and not personally sponsored) It Works! distributors and were directed to, and accessible to, Florida residents.

58.     Kaufman made another Facebook post on July 20, 2020 promoting and recruiting for Melaleuca, posting a photo of a Melaleuca magazine/booklet titled "Leadership" with a subtitle "ALL RECORDS SHATTERED! MORE ADVANCEMENTS, MORE LIVES CHANGED." *See* Exhibit 3, Kaufman July 20, 2020 Facebook Post.  This post reached at least two current (and not personally sponsored) It Works! distributors, with one current and active It Works! distributor commenting: "Pretty sure I saw your gorgeous face in that book!!!!!."  This post was also directed to, and accessible to, Florida residents.

59.     Kaufman posted again on July 22, 2020, stating "The shift is happening. They just keep coming [. . .] #ThisIsHome #AllRoadsLeadHere."  The "Here" and "Home" to which Kaufman refers are undoubtedly Melaleuca. This post reached at least two current (and not personally sponsored) It Works! distributors and it was directed and accessible to Florida residents. *See* Exhibit 4, Kaufman July 22, 2020 Facebook Post.

60.     Among other unfair, deceptive, and unlawful tactics, It Works! is informed and believes that at the direction of Melaleuca, the Distributor Defendants approached current It Works! distributors and falsely asserted that It Works! was "going out of business" in as little as three months.  In one instance, Distributor Defendant Geneveve Sykes presented a recruiting video conference that took place on July 27, 2020 and stated: "I don't see It Works! lasting a couple more months from what I know."  During the July 27, 2020 recruiting video conference, Distributor Defendant Geneveve Sykes also alleged that she still had friends with It Works! "corporate" who told her to "run."  This July 27, 2020 recruiting video conference was directed to, and accessible to, Florida residents.

61.     On information and belief, this July 27, 2020 recruiting video was also made in Florida.

62.     The Distributor Defendants made such statements to It Works! distributors in the context of trying to solicit the It Works! distributors to join Melaleuca.  The patently false statements concerning the health of It Works!' business were made not only to paint It Works! in a bad light but also to create a false sense of urgency for It Works! distributors to break their Agreements with It Works! and make the jump to Melaleuca.

63.      In addition to outright lies regarding the status of It Works!' business, the Distributor Defendants also engaged in other deceitful solicitation tactics, such as providing It Works! distributors with copies of fake checks purportedly representing substantial amounts of monthly compensation received from Melaleuca.

64.      In one example, Defendant Amber Hoerner sent a text message to a current It Works! distributor named Karen that included an image of two fake checks supposedly received from Melaleuca in March 2020 in the amounts of $43,576.26 and $35,437.75.  *See* Exhibit 5, Text Message from Hoerner.

65.     Upon information and belief, fake checks were produced by Melaleuca and given to certain Melaleuca distributors, including the Distributor Defendants.  Melaleuca endorsed these fake checks with the signature of its owner, Frank VanderSloot, to give the checks credibility and to make them appear real.  However, on information and belief, the only reason for providing these fake checks was so that they could be used in a campaign to misrepresent the amount of earnings that individuals could make if they became distributors for Melaleuca.

66.     Indeed, the checks that were sent by Defendant Hoerner and other Distributor Defendants do not actually represent monthly amounts received by a Melaleuca distributor.  Rather, if the amounts were received at all, the amounts represent compensation received by a Melaleuca distributor for multiple months or even the entire year.  Melaleuca's actions in dating

the fake checks for a specific month were employed as a devious artifice intended to convey an inflated sense of the compensation that a Melaleuca distributor received or that an It Works! distributor being solicited could expect to receive from Melaleuca.

67.     As to Defendant Hoerner, the images of the fake checks were also accompanied by a message from her insinuating that the It Works! distributor who received the message, Karen, was underpaid by It Works!.  The message asked Karen if she "ever found the success [Karen] had worked for for all those years."  *See id.*  Defendant Hoerner also referenced another It Works! distributor named Jennifer and suggested that Jennifer was underpaid as well earning as much as $900 during an unspecified period.  According to Defendant Hoerner, she left It Works! out of concern for her "team" struggling.

68.     The images of the fake checks, the amounts of the checks juxtaposed with references to supposedly lesser amounts made by It Works! distributors, the use of specific It Works! distributor names, and the posing of a loaded, rhetorical question as to whether Karen "ever found success" after working hard for "all those years" are all part of an intentional campaign designed to dupe current It Works! distributors into believing they are somehow being underpaid and / or mistreated.

69.     Moreover, Defendant Hoerner's reference to her alleged concerns for her team's struggles at It Works! are further intended to not-so-subtly encourage the target of the misleading and negative messaging, in this case Karen, to consider not only leaving It Works! herself but to encourage other distributors on her team to do so as well.

70.     On its face, the type of messaging conveyed by Defendant Hoerner and others is misleading and unfair to all involved.  Unfortunately for the Distributor Defendants and Melaleuca, the United States Federal Trade Commission ("FTC") agrees, and Melaleuca has recently found

itself in the FTC's cross hairs for making misleading income claims.  *See* Exhibit 6, June 5, 2020

Letter from Federal Trade Commission to Melaleuca.

71.     The FTC has long grappled with bad actors such as Melaleuca in the multi-level

marketing industry and has deemed recruiting tactics such as those used by Melaleuca distributors

to be misleading.  In particular, the FTC's website sets out "some guiding principles" that include:

a.      Some business opportunities may present themselves as a way for participants to
get rich or lead a wealthy lifestyle.  They may make such representations **through
words or through images** . . . .  **If participants generally do not achieve such
results, these representations likely would be false or misleading to current or
prospective participants**.

b.      Business opportunities may also claim that participants, while not necessarily
becoming wealthy, can achieve career-level income. They may represent through
words or images that participants can earn thousands of dollars a month, quit their
jobs, "fire their bosses," or become stay-at-home parents. If participants generally
do not achieve such results, these representations likely would be false or
misleading to current or prospective participants.

c.      **Even truthful testimonials from the very small minority of participants who
do earn career-level income or more will likely be misleading unless the
advertising or presentation also makes clear the amount earned or lost by most
participants**.

*See* Federal Trade Commission, *Business Guidance Concerning Multi-Level Marketing* (January
2018) (emphasis added), *available at* https://www.ftc.gov/tips-advice/business-
center/guidance/business-guidance-concerning-multi-level-marketing.

72.     Notably, Defendant Hoerner's unabashed representations about her income do not

include any qualifying statements whatsoever about what a typical distributor for Melaleuca could

expect to earn, and as a result, such statements are clearly misleading.

73.      In fact, Melaleuca itself has published statistics showing that its typical distributor

earns far less than what Defendant Hoerner purported to earn.  *See* Exhibit 7, Melaleuca, *Melaleuca*

*Leadership in Action*, at Pg. 52 (Ed. July 2020).  Melaleuca instructs its distributors—referred to

by Melaleuca as "Marketing Executives"—not to make income claims, stating: "Most people with

a Melaleuca business use their Melaleuca business to supplement their income. Even for those who put serious time and effort into building a Melaleuca business, it normally takes years to build the business to the point that anyone should ever consider leaving their full-time job to live only on their Melaleuca income." *See* Exhibit 8, Melaleuca, *Building Your Business Online: Guidelines for Using the Internet, Social Media, and Electronic Communications* at Pg. 7 (hereinafter "Melaleuca Online Guidelines").

74.     The Defendant Distributors, as top Melaleuca Marketing Executives, should know and understand their own Policies and Procedures, yet they all violated the Melaleuca Policies and Procedures multiple times.  Section 32 of the Melaleuca Policies and Procedures provides:

> 32. Income Claims
> Marketing Executives are prohibited from making false, misleading or inaccurate claims about their or other persons' compensation received under the Compensation Plan. If, when presenting the Melaleuca business opportunity, a Marketing Executive makes any claim regarding his/her compensation from Melaleuca, or the potential compensation payable under Melaleuca's Compensation Plan, the Marketing Executive must also show the person(s) receiving the presentation Melaleuca's most current published Marketing Executives Annual Income Statistics sheet.

75.     Clearly Melaleuca understands the importance of abiding by its policies and procedures.  As Melaleuca clearly stated recently in an article addressing a warning letter received by Melaleuca from the Federal Trade Commission based upon false income claims made by a distributor it terminated:  "[C]ontrary to Melaleuca's policies, you are promoting a business opportunity primarily based on finding people interested in earning money rather than on attracting real customers with genuine interest in Melaleuca's products." *See* Exhibit 9, Idaho Statesman, *FTC Warns Firm Owned by Idaho's Richest Man About Marketing Claims* (June 9, 2020), *available at* https://www.idahostatesman.com/news/business/article243369041.html

76. The company informed the FTC of the action it took, stating: "It's not unusual, [Melaleuca owner Frank] VanderSloot said, for the company to terminate representatives who violate company polices. "That's one thing we can't afford to mess around with," VanderSloot said. "We have these policies in place, and if we don't enforce them, they aren't worth anything." The FTC warning letter distributor was terminated for promoting that new Melaleuca representatives "are likely to earn substantial income." *See* Exhibit 6.

77. This termination-worthy representation pales in comparison to handing out of checks that falsely represent hundreds of thousands of dollars earned per month. Yet none of the Distributor Defendants have been terminated for violating Melaleuca Policies and Procedures. Indeed, Melaleuca Policy and Procedure Section 40(c) states:

> Online training and information content may not:
>
> (i) be used for the purpose of soliciting new customers or Marketing Executives, except when used for a live presentation of the Melaleuca Overview slides;

78. In addition, Melaleuca's publication Building Your Business Online: Guidelines for Using the Internet, which is incorporated by reference into the Melaleuca Policies and Procedures, provides: "Do not:  Make any public mention or post copies of checks from Melaleuca." *See* Exhibit 8, Melaleuca Online Guidelines at Pg. 6.

79. Because Melalueca has not terminated the Distributor Defendants,  Melaleuca has either incorporated fabrications about It Works! into its Overview slides or condoned the actions of the Distributor Defendants, even when they have violated this Melaleuca provision on numerous occasions.

80. For example, Defendant Rankin has made her prerecorded presentation available online, while also conducting new recruitment meetings on a nightly basis. Upon information and

belief, Defendant Rankin engaged in these actions in the state of Florida, and targets these presentations and meetings to Florida residents.

81.     It Works! has suffered direct financial losses due to the actions of the Distributor Defendants and Melaleuca.  Currently, over 250 It Works! distributors have left It Works! and joined Melaleuca. At least 30 of these departed distributors reside in Florida.

82.     The two most recent Distributor Defendants who terminated their agreement with It Works!, Lea Piccoli and Sarah Rankin, illustrate why injunctive relief is necessary.  For the month of June 2020, Piccoli had approximately $380,000 in sales with It Works! and Rankin had about $1.4 million in sales with It Works.  Further in June, Piccoli had a total of 22,834 active and inactive distributors and customers in her downline organization, while Rankin had a total of 142,712 active and inactive distributors, loyal customers, and retail customers in her organization. Of these 142,712 individuals, more than 7,000 of them reside in Florida.  Upon information and belief, Rankin engaged in selling and recruiting from, and in, the State of Florida.

83.     On information and belief, on behalf of and at the direction of Melaleuca, and with its assistance, Rankin has solicited distributors and customers in her It Works! organization who reside in Florida to become distributors and customers of Melaleuca.

84.     Other Distributor Defendants have also relied on similar misleading tactics with Melaleuca having knowledge of and being the driving force behind them.

85.     As another example, Defendants Ashley Olive and Brandon Olive have also solicited It Works! distributors by disclosing a fake check that supposedly shows income from Melaleuca in the amount of $301,703.81 for April 2020.  *See* Exhibit 10, May 12, 2020 Check to Ashley and Brandon Olive.  Whether or not they actually received the stated amount from Melaleuca, the clear purpose behind relying on the fake check in soliciting It Works! distributors

is to imply that It Works! distributors would achieve comparable income levels by doing nothing more than breaking their Agreements with It Works! and joining Melaleuca.

86.     Significantly, this is Ashley Olive's second bite at the apple, and she is well aware of the wrongful nature of her conduct.

87.     On or about September 25, 2018, It Works! sent Defendant Ashley Olive a cease and desist letter, with notice to the Melaleuca legal department, regarding nearly identical misconduct by Olive attempting to lure It Works! distributors into terminating their contract in order to join Melaleuca.  *See* Exhibit 8, September 25, 2018 Letter to Ashley Olive.

88.     At the time of the September 25, 2018 letter, Ashley Olive was within the six-month non-solicitation period set forth in the Agreement she signed with It Works!  *See* Exhibit 1, *Policies and Procedures* § 3.9.1.  Upon information and belief, Defendant Ashley Olive's most recent antics viewed in light of her prior wrongful conduct as outlined in the September 25, 2018 letter shows that her violation of her contractual obligations with It Works! has been systemic, ongoing, and continuous in nature.

89.     In a transparent attempt to burnish the credibility their deceptive and delusive claims to It Works! distributors, Defendants Ashley and Brandon Olive have at times published to It Works! distributors what purports to be an official-looking April 2020 Business Report Summary showing more than seven figures in income received from Melaleuca.  *See* Exhibit 9, April 2020 Business Report Summary from Ashley and Brandon Olive.

90.     Upon information and belief, Melaleuca furnishes its distributors with fake checks and "Business Report Summaries" in order to equip them with vague and misleading information used to solicit distributors from other organizations—such as It Works!—to join Melaleuca.

91.     It is no coincidence that Distributor Defendants Makenzie Schultz, Steven Shultz, Kellie Kaufman, Geneveve Sykes (through the name Get Fit With Gen, Inc.), and Jeanie McWhorter have all relied on similar tactics in publishing by text message or social media fake checks or excerpts from "Business Summaries" showing substantial amounts allegedly received from Melaleuca.  *See* Exhibit 13, May 12, 2020 Check to Makenzie & Steven Shultz in the amount of $118,502.11; Exhibit 14, Kellie Kaufman Message and Commission and Bonus Summary; Exhibit 15, Jeanie McWhorter Message and Commission and Bonus Summary; Exhibit 16, Geneveve Sykes April 2020 Business Report Summary; Exhibit 17, May 12, 2020 Check to Kimberly Bertolucci & April 2020 Bertolucci Business Report Summary.

92.     Melaleuca encourages its distributors to solicit and/or poach distributors from competing companies through the use of deceptive claims regarding the income that potential distributors could reasonably expect to receive.  Melaleuca and its distributors, including the Distributor Defendants, promote the use of such tactics through hosting events such as online "Check Opening Zooms" where distributors are encouraged to publicly disseminate deceptive information misrepresenting the compensation they receive. See Exhibit 18.

93.     On information and belief, communications using the fake checks and Business Report Summaries, including "Check Opening Zooms" and social media postings and messages, were made and/or posted online on websites accessible to Florida residents.

94.     Melaleuca's production of fake checks demonstrates that it deliberately provides materials to the Distributor Defendants, including the Rankins and the Sykeses, in order to assist them with the dissemination of false and misleading representations about the amount of money individuals could make as distributors of Melaeuca.

95.     Indeed, Melaleuca has been on notice of the Distributor Defendants' bad acts for over a month—It Works! informed Melaleuca of its distributors' misconduct prior to filing the Complaint—and yet, upon information and belief, the Distributor Defendants have not been punished or discouraged from continuing their pattern of illegal actions.  To the contrary, the Distributor Defendants have further breached their contractual obligations and committed additional unlawful acts since the filing of It Works!' Original Complaint, all with the approval and support of Melaleuca.

96.     For example, on July 28th, the day that this lawsuit was filed, Defendant Sarah Rankin hosted a Zoom meeting to recruit current It Works! distributors on behalf of Melaleuca. Twelve individuals who were It Works! distributors not personally sponsored by Sarah Rankin participated in this meeting, one of which is a Florida resident, and so far, Sarah Rankin has been successful at recruiting five of them to depart It Works!.  On information and belief, Rankin hosted the Zoom meeting from her residence in Florida.

97.     Defendant Joshua Rankin also joined in a separate Zoom meeting which was recorded and made available to various It Works! distributors who were encouraged to further distribute it to their downline for recruiting purposes.  In this recording, Joshua Rankin extolls the virtues of Melaleuca's products.  The recording was made available via a link such that anyone can access it, including It Works! distributors who Joshua Rankin did not personally sponsor and It Works! distributors in the State of Florida.  On information and belief, this Zoom meeting was recorded in Florida.

98.     Disturbingly, Sarah Rankin has engaged in active deception to try to hide her breaches of contract.  More specifically, on July 29, 2020, before one of her recruitment conferences on Zoom, Sarah Rankin invited Laura Balzer ("Balzer"), a current It Works!

distributor whom she did not personally sponsor and who resides in Florida, to participate. In this July 29 communication, Sarah Rankin instructs Balzer on how to "sneak" into the Zoom meeting without her presence being detected in an effort to conceal evidence relevant to this dispute. Specifically, Sarah Rankin tells Balzer to turn off her camera and to change her name to "Iphone."

99.     On July 30, 2020, Sarah Rankin and Joshua Rankin appeared in a Facebook post from a current It Works! distributor (not personally sponsored by either) discussing Sarah's promotion of her new Melaleuca business.

100.     On information and belief, Sarah Rankin and Joshua Rankin recorded the July 30th video in Florida, and the post is targeted to, and accessible by, people in Florida.

101.     Adding insult to injury, Sarah Rankin is using false information in her illegal recruitment to disparage It Works!.  For example, Sarah Rankin accused It Works! of lying about "Dr Don" in an apparent attempt to solicit Carly Morris ("Morris"), a current It Works! distributor whom Sarah Rankin did not personally sponsor, to join Melaleuca.

102.     Sarah Rankin has even resorted to witness intimidation to attempt to conceal her unlawful actions.  On August 4 or 5, 2020, Morris, who was named as a witness in It Works!' Motion for TRO, received intimidating Facebook messages from Sarah Rankin.  In the messages, Sarah Rankin tells Morris that "[t]he request to submit 'evidence' was denied by the court[.]" Apparently emboldened by her belief that discovery would not be had in this matter, and that her messages would not be discovered, Sarah Rankin threatened Morris by stating "[y]ou'll get your Karma" before ending her message by calling Morris a "CUNT."

103.     Other Distributor Defendants have also violated their contractual obligations since the filing of this lawsuit.  For example, Defendant Piccoli posted on July 31, 2020 promoting the Melaleuca business opportunity, posting a picture of a then-current (and personally sponsored) It

Works! distributor, congratulating that distributor on her "first achievement" (with Melaleuca), stating she was "feeling excited," and stating "Sometimes scary decisions [i.e. joining Melaleuca and recruiting others from It Works! to join] = big rewards!"  The It Works! compliance team locked the pictured distributor's account, as she has also clearly breached her Agreement.  In addition to the pictured distributor, Piccoli's post reached at least nine (9) other then-current (and not personally sponsored) It Works! distributors, including two then-current It Works! distributors whose accounts were also locked pending It Works!' investigation into their suspected breaches.

104.    As for Defendant Herold, she posted on July 22, 2020, announcing her resignation from It Works! and promoting her new Melaleuca business.  This post reached at least eighteen then-current (and not personally sponsored) It Works! Distributors, including at least one who resigned to join Melaleuca just two days later, and several distributors whose accounts It Works! later locked due to suspected violations of those distributors' Agreements.  Of those eighteen It Works! Distributors, at least one is a Florida resident.

105.    Herold made a second post on July 27, 2020 promoting Melaleuca products.  This post reached at least one then-current (and not personally sponsored) It Works! distributor who commented on the post.  Due to suspected violations of this distributor's own Agreement, It Works! compliance suspended that distributor's account on July 30, 2020.

106.    On information and belief, throughout all of the above-described misconduct and unlawful solicitations, the Distributor Defendants and Melaleuca utilized It Works!' confidential and trade secret information, including Downline Activity Reports and eSuite.  Indeed, upon their departures, each of the Distributor Defendants received correspondences requesting that they return all copies of their Downline Activity Reports.  To date, the Distributor Defendants have refused to return their Downline Activity Reports.  By utilizing this information, the Distributor

Defendants and Melaleuca are able to recruit more effectively and target It Works!' most productive distributors. However, pursuant to the terms of the Agreement that prohibit the use of It Works! Confidential Information, the Distributor Defendants do not have permission to use or share that Information.

107.    Rather than address its own distributors' flagrant violations of their Agreements with It Works!, Melaleuca has joined in the procedural gamesmanship that the Distributor Defendants began in an attempt to avoid the obligations of the Agreement, including, but not limited to, filing a frivolous interlocutory appeal in an effort to effect a stay of this litigation until the term of the Distributor Defendants' non-solicitation agreements expire.

## COUNT I

### [Breach of the Agreements – Injunctive Relief]

### Against the Distributor Defendants

108.    It Works! realleges paragraphs 1 through 107 as if fully set forth in this Count.

109.    This is an action for injunctive relief against the Distributor Defendants.

110.    The Agreements are valid and binding contracts.

111.    The Distributor Defendants have breached their Agreements by using It Works! confidential information and trade secrets, including information contained in Downline Activity Reports and eSuite, to sell, or attempt to sell, Melaleuca's competing network marketing programs, products and services.

112.    The Distributor Defendants have also breached their Agreements by soliciting It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services, and have done so during the term of their Agreements and thereafter.  The non-solicitation provisions in the Agreement protect It Works!' intellectual property rights,

including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information.

113.    The Distributor Defendants and Melaleuca's solicitation of It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services includes illegal recruiting of It Works! distributors, procuring It Works! distributors' resignations from It Works!, and having those former It Works! distributors join Melaleuca's competing network marketing business to sell its programs, products and services.

114.    The Distributor Defendants and Melaleuca's solicitation of It Works! distributors and customers includes requesting, inducing and/or advising persons to withdraw, curtail, or cancel their existing and prospective business and business relationships with It Works!.

115.    In performing these unlawful acts, the Distributor Defendants have also breached their Agreements by making inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential Information, including Downline Activity Reports and eSuite information:

(a)     to third parties, including Melaleuca;

(b)     to compete with It Works! for purposes other than managing or supporting the Distributor Defendants' It Works! business;

(c)     to recruit and solicit It Works! distributors and customers—including those listed on Downline Activity Reports or in eSuite; and

(d)     to influence or induce, or attempt to influence or induce, It Works! distributors and customers to alter (indeed, to terminate) their business relationships with It Works!.

116.    The non-competition provisions of the Agreement are supported by adequate consideration and It Works!' legitimate business interests of its:  (1) trade secrets, including the Confidential Information; (2) valuable confidential business information, including the

Confidential Information; (3) substantial relationships with existing and prospective It Works! distributors and customers; (4) substantial goodwill associated with its name and service marks; (6) substantial goodwill in the United States and international markets; and (7) extraordinary and specialized training provided to the Distributor Defendants.

117.   There is a real and immediate threat going forward that the Distributor Defendants will:

(a)   use the information contained in Downline Activity Reports and eSuite to sell, or attempt to sell, Melaleuca's competing network marketing programs, products and services;

(b)   solicit It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services; and

(c)   make inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential Information, including Downline Activity Reports and eSuite information;

all in violation of the restrictive covenants and confidentiality provisions of the Agreement.

118.   Melaleuca, by virtue of its relationship with the Distributor Defendants, as a result of the September 25, 2018 letter between Melaleuca and It Works!, and because of this lawsuit, has knowledge of the restrictive covenants and confidentiality provisions applicable to the Distributor Defendants in the Agreement.

119.   The Distributor Defendants' breaches of the restrictive covenants and confidentiality provisions of the Agreement have resulted and will continue to result in irreparable and continuing harm to It Works!, its business, distributor and customer relationships, goodwill, and other proprietary interests, for which It Works! has no adequate remedy at law.

120.    The Distributor Defendants' breaches of the restrictive covenants and confidentiality provisions of the Agreement also have resulted and will continue to result in other significant, long-term damage to It Works! and will provide a significant unfair and unlawful advantage to the Distributor Defendants and Melaleuca.

121.    Unless the Distributor Defendants are enjoined by this Court from engaging in the wrongful conduct described herein, It Works! will suffer irreparable harm for which it lacks an adequate remedy at law.

122.    It Works! has been and is likely to continue to be substantially and irreparably injured in its business, customer relationships, goodwill, and other proprietary interests, and the threat of continued injury to its business, customer relationships, goodwill, and other proprietary interests outweighs any harm the issuance of an injunction may inflict upon the Distributor Defendants.

123.    In light of the foregoing, the provisions of the Agreement which It Works! seeks to enforce are reasonably necessary to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information.

124.    It Works! has a substantial likelihood of success on the merits of its claims. The Court's entry of the requested injunction will serve the public interest by honoring the Agreements freely negotiated by the parties and protecting It Works!' legitimate business interests, including its intellectual property rights in its customer and/or distributor lists, trade secrets, and confidential information, which the Agreements were intended to protect in the first instance.

WHEREFORE, to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information, Plaintiff, It Works! Marketing, Inc., demands judgment against Defendants, Kimberly Bertolucci a/k/a

Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley

Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven

Schultz, Geneveve Sykes, and Sean Sykes:

(a)     preliminarily and permanently enjoining the Distributor Defendants, their officers, agents, servants, employees, and attorneys, and all persons or entities in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from:

(i)     using the information contained in any Downline Activity Report or eSuite to sell, or attempt to sell, Melaleuca's competing network marketing programs, products and services;

(ii)    soliciting It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services; and

(iii)   making inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential Information, including Downline Activity Reports and eSuite information;

(b)     ordering the Distributor Defendants to return all Confidential Information to It Works!; and

(c)     awarding all other relief to which It Works! is entitled at law or in equity.

## COUNT II

### [Tortious Interference with Business Relationships]

### Against Melaleuca

125.    It Works! realleges paragraphs 1 through 107 as if fully set forth in this Count.

126.    This is an action for injunctive relief and damages against Melaleuca for tortious interference with business relationships.

127.    It Works! has legal rights in identifiable, advantageous business relationships with its distributors.

128.     Melaleuca has knowledge of It Works!' existing business relationships with distributors by virtue of the contractual relationships established through entry of the Agreements, including It Works!' Agreements with the Distributor Defendants.

129.     Melaleuca intentionally and unjustifiably interfered with It Works!' existing business relationships with its distributors.

130.     As a result of Melaleuca's intentional and wrongful conduct, It Works! distributors have terminated their distributor relationships with It Works!.

131.     It Works! has been damaged as a result of Melaleuca's intentional and unjustified interference with It Works!' business relationships with its distributors.

132.     Unless Melaleuca is enjoined by this Court from engaging in the wrongful conduct described herein, It Works! will suffer irreparable harm for which it lacks an adequate remedy at law.

133.     It Works! has been and is likely to continue to be substantially and irreparably injured in its business, distributor and customer relationships, goodwill, and other proprietary interests, and the threat of continued injury to its business, customer relationships, goodwill, and other proprietary interests outweighs any harm the issuance of an injunction may inflict upon Melaleuca.

134.     Entry of an injunction is necessary to protect It Works!' business relationships with its distributors and to protect its intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information.

135.     It Works! has a substantial likelihood of success on the merits of its claims.

136.     The Court's entry of the requested injunction will serve the public interest by preventing Melaleuca from engaging in the anticompetitive practice of interfering with It Works!'

business relationships with its distributors and protecting It Works!' intellectual property rights in its distributor lists, trade secrets, and confidential information.

WHEREFORE, to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information, Plaintiff, It Works Marketing, Inc., demands judgment against Defendant, Melaleuca Inc.:

(a) preliminarily and permanently enjoining Melaleuca, its officers, agents, servants, employees, and attorneys, and all persons or entities in active concert or participation with it who receive actual notice of the injunction by personal service or otherwise, from interfering with It Works! business relationships with its distributors; and

(b) for damages in an amount to be proved at trial, including punitive damages, interest, costs, and all other relief to which It Works! is entitled at law or in equity.

## COUNT III

### [False Advertising Under the Lanham Act, 15 U.S.C. § 1125]

### Against Melaleuca

137.    It Works! realleges paragraphs 1 through 107 as if fully set forth in this Count.

138.    This is an action for injunctive relief and damages against Melaleuca for false advertising under the Lanham Act, 15 U.S.C. § 1125.

139.    Melaleuca has made false statements of fact in commercial advertisements about allegedly superior commercial opportunities available to Melaleuca distributors over It Works! distributors, including false and misleading statements concerning the income that It Works! distributors and other persons could expect to receive after joining Melaleuca ("income claims").

140.    Those statements by Melaleuca are false on their face or by necessary implication, inaccurate, and/or the statements are likely to mislead or confuse a substantial portion of their intended audience.

141.    Melaleuca's unsubstantiated income claims actually deceived or have the potential to deceive a substantial segment of the intended audience, to induce It Works! distributors to breach their Agreements and enroll with Melaleuca, and to mislead the audience into believing that they can and will in fact earn tens of thousands or more per month working as distributors for Melaleuca, which representations are utterly false.

142.    Melaleuca's unsubstantiated income claims are material and are likely to influence the willingness of the audience to become Melaleuca distributors by purchasing that business opportunity.

143.    Melaleuca caused its false statements to enter interstate commerce by publishing those statements on the internet, through online electronic meeting platforms or through text messages, and/or other electronic communication means crossing state lines.

144.    It Works! is or is likely to be injured as a result of Melaleuca's false income claims by direct diversion of distributors to and sales of competing products by Melaleuca.

145.    Unless Melaleuca is enjoined by this Court from engaging in the wrongful conduct described herein, It Works! will suffer irreparable harm for which it lacks an adequate remedy at law.

146.    It Works! has been and is likely to continue to be substantially and irreparably injured in its business, distributor and customer relationships, goodwill, and other proprietary interests, and the threat of continued injury to its business, customer relationships, goodwill, and other proprietary interests outweighs any harm the issuance of an injunction may inflict upon Melaleuca.

147.    Entry of an injunction against Melaleuca is necessary to protect It Works!' business relationships with its distributors and customers.

33

148.    It Works! has a substantial likelihood of success on the merits of its claims.

149.    The Court's entry of the requested injunction will serve the public interest by preventing Melaleuca from disseminating false and misleading statements to the public and protecting It Works!' business relationships with its distributors and customers.

WHEREFORE, to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information, Plaintiff, It Works Marketing, Inc., demands judgment against Defendant, Melaleuca Inc.:

(a) preliminarily and permanently enjoining Melaleuca, its officers, agents, servants, employees, and attorneys, and all persons or entities in active concert or participation with it who receive actual notice of the injunction by personal service or otherwise, from making false statements of fact in commercial advertisements about allegedly superior commercial opportunities available to Melaleuca distributors over It Works! distributors, including false and misleading statements concerning the income that It Works! distributors and other persons could expect to receive after joining Melaleuca; and

(b) for damages in an amount to be proved at trial, including punitive damages, interest, costs, and all other relief to which It Works! is entitled at law or in equity.

## COUNT IV

### [Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.]

### Against the Distributor Defendants and Melaleuca

150.    It Works! realleges paragraphs 1 through 107 as if fully set forth in this Count.

151.    This is an action for injunctive relief against the Distributor Defendants and injunctive relief and damages against Melaleuca for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

152.    It Works! possessed trade secret information, including the Confidential Information, and took reasonable steps to protect its secrecy, including, but not limited to,

restricting access to such information and requiring It Works! distributors, such as the Distributor Defendants, to sign confidentiality agreements.

153.    The Confidential Information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure.

154.    The Distributor Defendants obtained the Confidential Information under circumstances giving rise to a duty to maintain the secrecy of the Confidential Information or limit its use, including through contractual and other business relationships.

155.    Melaleuca has reason to know that such Confidential Information was obtained under a duty to maintain its secrecy.  Melaleuca wrongfully acquired the Confidential Information at least by soliciting the information from It Works! distributors who had or have a duty of loyalty to It Works! and an obligation, contractual and otherwise, to maintain the confidentiality of such information.

156.    The Distributor Defendants and Melaleuca made unauthorized disclosure and use of the Confidential Information by selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services.

157.    The misuse and unauthorized disclosure of It Works Confidential Information is ongoing, and by soliciting It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services, the Distributor Defendants and Melaleuca have and will continue to misappropriate It Works!' trade secret information by, among other things, making inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential Information, including Downline Activity Reports and eSuite information, including to Melaleuca.

158.    The Distributor Defendants and Melaleuca know or have reason to know that It Works!' trade secret information was improperly obtained for the purposes of selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services, and soliciting It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services.

159.    As a direct and proximate result of the Distributor Defendants and Melaleuca's misappropriation of It Works!' trade secret information, It Works! has suffered damages.

160.    Unless Melaleuca and the Distributor Defendants are enjoined by this Court from engaging in the wrongful conduct described herein, It Works! will suffer irreparable harm for which it lacks an adequate remedy at law.

161.    It Works! has been and is likely to continue to be substantially and irreparably injured in its business, distributor and customer relationships, goodwill, and other proprietary interests, and the threat of continued injury to its business, customer relationships, goodwill, and other proprietary interests outweighs any harm the issuance of an injunction may inflict upon Melaleuca or the Distributor Defendants.

162.    Entry of an injunction is necessary to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information.

163.    It Works! has a substantial likelihood of success on the merits of its claims.

164.    The Court's entry of the requested injunction will serve the public interest by preventing Melaleuca and the Distributor Defendants from profiting from the unauthorized use of a competitor's trade secrets and protecting It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information.

WHEREFORE, to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information, Plaintiff, It Works Marketing, Inc., demands judgment against Defendants, Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes and Sean Sykes:

(a) preliminarily and permanently enjoining the Distributor Defendants, their officers, agents, servants, employees, and attorneys, and all persons or entities in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from misappropriating or otherwise making unauthorized use or disclosure of It Works!' trade secrets and confidential information, including its Downline Activity Reports and eSuite; and

(b) awarding all other relief to which It Works! is entitled at law or in equity.

WHEREFORE, to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information, Plaintiff, It Works Marketing, Inc., demands judgment against Defendant, Melaleuca, Inc.:

(a) preliminarily and permanently enjoining Melaleuca, its officers, agents, servants, employees, and attorneys, and all persons or entities in active concert or participation with it who receive actual notice of the injunction by personal service or otherwise, from misappropriating or otherwise making unauthorized use or disclosure of It Works!' trade secrets and confidential information, including its Downline Activity Reports and eSuite; and

(b) for damages in an amount to be proved at trial, including unjust enrichment and exemplary damages, together with interest, costs, attorneys' fees, and all other relief to which It Works! is entitled at law or in equity.

## <u>COUNT V</u>

### [Misappropriation of Trade Secrets - § 688.001, *et seq.*, Fla. Stat.]

### Against the Distributor Defendants and Melaleuca

165.    It Works! realleges paragraphs 1 through 107 as if fully set forth in this Count.

166.    This is an action for injunctive relief against the Distributor Defendants and injunctive relief and damages against Melaleuca for misappropriation of trade secrets under the Florida Uniform Trade Secrets Act, § 688.001, *et seq.*, Fla. Stat.

167.    It Works! possessed trade secret information, including the Confidential Information, and took reasonable steps to protect its secrecy, including, but not limited to, restricting access to such information and requiring It Works! distributors, such as the Distributor Defendants, to sign confidentiality agreements.

168.    The Confidential Information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure.

169.    The Distributor Defendants obtained the Confidential Information under circumstances giving rise to a duty to maintain the secrecy of the Confidential Information or limit its use, including through contractual and other business relationships.

170.    Melaleuca has reason to know that such Confidential Information was obtained under a duty to maintain its secrecy.  Melaleuca wrongfully acquired the Confidential Information at least by soliciting the information from It Works distributors who had or have a duty of loyalty to It Works and an obligation, contractual and otherwise, to maintain the confidentiality of such information.

171.    The Distributor Defendants and Melaleuca made unauthorized disclosure and use of the Confidential Information by selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services.

172.    The misuse and unauthorized disclosure of It Works Confidential Information is ongoing, and by soliciting It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services, the Distributor Defendants and Melaleuca have and will continue to misappropriate It Works!' trade secret information by, among other things, making inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential Information, including Downline Activity Reports and eSuite information, including to Melaleuca.

173.    The Distributor Defendants and Melaleuca know or have reason to know that It Works!' trade secret information was improperly obtained for the purposes of selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services, and soliciting It Works! distributors and customers for Melaleuca's competing network marketing programs, products and services.

174.    As a direct and proximate result of the Distributor Defendants and Melaleuca's misappropriation of It Works!' trade secret information, It Works! has suffered damages.

175.    Unless Melaleuca and the Distributor Defendants are enjoined by this Court from engaging in the wrongful conduct described herein, It Works! will suffer irreparable harm for which it lacks an adequate remedy at law.

176.    It Works! has been and is likely to continue to be substantially and irreparably injured in its business, distributor and customer relationships, goodwill, and other proprietary interests, and the threat of continued injury to its business, customer relationships, goodwill, and other proprietary interests outweighs any harm the issuance of an injunction may inflict upon Melaleuca or the Distributor Defendants.

177.     Entry of an injunction is necessary to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information.

178.     It Works! has a substantial likelihood of success on the merits of its claims.

179.     The Court's entry of the requested injunction will serve the public interest by preventing Melaleuca and the Distributor Defendants from profiting from the unauthorized use of a competitor's trade secrets and protecting It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information.

WHEREFORE, to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information, Plaintiff, It Works Marketing, Inc., demands judgment against Defendants, Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes and Sean Sykes:

(a) preliminarily and permanently enjoining the Distributor Defendants, their officers, agents, servants, employees, and attorneys, and all persons or entities in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from misappropriating or otherwise making unauthorized use or disclosure of It Works!' trade secrets and confidential information, including its Downline Activity Reports and eSuite; and

(b) awarding all other relief to which It Works! is entitled at law or in equity.

WHEREFORE, to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information, Plaintiff, It Works Marketing, Inc., demands judgment against Defendant, Melaleuca, Inc.:

(a) preliminarily and permanently enjoining Melaleuca, its officers, agents, servants, employees, and attorneys, and all persons or entities in active concert or participation

40

with it who receive actual notice of the injunction by personal service or otherwise, from misappropriating or otherwise making unauthorized use or disclosure of It Works!' trade secrets and confidential information, including its Downline Activity Reports and eSuite; and

(b) for damages in an amount to be proved at trial, including unjust enrichment and exemplary damages, together with interest, costs, attorneys' fees, and all other relief to which It Works! is entitled at law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiff, It Works Marketing, Inc., hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

It Works! respectfully requests that this Court grant the following relief:

(i)     Enter judgment in favor of It Works! on all counts of this Complaint;

(ii)    Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, and attorneys, and all persons or entities in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, as described above;

(iii)   order Defendants to return all Confidential Information to It Works!;

(iv)    award money damages, including compensatory damages and punitive damages as permitted by law, against Melaleuca in an amount to be proven at trial;

(v)     award attorneys' fees, costs, and interest against Melaleuca; and

(vi)    award all other relief to which It Works! is entitled at law or in equity.

Dated:  September 1, 2020

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ John C.C. Sanders, Jr.*
    John C.C. Sanders, Jr.
    Texas Bar No. 24057036
    jsanders@winston.com
    Katrina Eash
    Texas Bar No. 24074636
    keash@winston.com
    Hayden Duffy
    Texas Bar No. 24097975
    hduffy@winston.com
    John Sullivan
    Texas Bar No. 24098485
    jsullivan@winston.com
    Rachel Koehn
    Texas Bar No. 24110102
    rkoehn@winston.com
    2121 N. Pearl St., Suite 900
    Dallas, Texas 75201
    Telephone: 214-453-6500
    Telecopy: 214-453-6400


*/s/  Ernest J. Marquart*
Ernest J. Marquart, Florida Bar No. 905860
Jeffrey B. Fabian, Florida Bar No. 85868
SHUMAKER, LOOP & KENDRICK, LLP
101 East Kennedy Blvd.
Suite 2800
Tampa, Florida 33602
Telephone:  (813) 229-7600
Facsimile: (813) 229-1660
emarquart@shumaker.com (Primary e-mail)
mdesilles@shumaker.com (Secondary e-mail)
jfabian@shumaker.com (Primary e-mail)
ldyer@shumaker.com (Secondary e-mail)

**Attorneys for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 1, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<u>/s/ John C.C. Sanders, Jr.</u>
**Attorney**