# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| It Works Marketing, Inc., | ) |
| Plaintiff, | ) Civil Action No.: <br> ) 8:20-cv-01743-TPB-TGW |
| v. | ) |
| Melaleuca Inc., Kimberly Bertolucci a/k/a Kimberly McCauley, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven Schultz, Geneveve Sykes, and Sean Sykes, | ) |
| Defendants. | ) |

**IT WORKS!' RESPONSE IN OPPOSITION TO DISTRIBUTOR DEFENDANTS' JOINT RENEWED MOTION TO COMPEL MEDIATION AND ARBITRATION**

Plaintiff It Works Marketing, Inc. ("It Works!" or "Plaintiff") responds in opposition to the Distributor Defendants' Joint Renewed Motion to Compel Mediation and Arbitration (the "Renewed Motion") (Dkt. 119).

## I. INTRODUCTION

This Court has twice ruled that It Works!' request for injunctive relief is exempt from the arbitration provisions in the Distributor Defendants' Agreements with It Works!—once when it denied the Distributor Defendants' first motion to stay, *see* Dkt. 87, and again when the Court rejected Defendants' request for a stay pending appeal, *see* Dkt. 108, impliedly holding that Defendants' interlocutory appeal of the Court's denial of a stay was frivolous. And the Court has explained its reasons for doing so: "the agreement expressly excludes from arbitration claims seeking injunctive relief to protect trade secrets, confidential information, and enforcement of the

non-solicitation provision of the contract." Dkt. 87, at 2-3. These rulings and It Works!' subsequent amendment of its complaint render the Distributor Defendants' Joint Renewed Motion to Compel Mediation and Arbitration just as frivolous as their appeal.

However, the Distributor Defendants continue to pursue their meritless requests for relief in a transparent attempt to delay these proceedings. But their arguments are no better with age or repetition of them. Because of Defendants' gamesmanship, It Works! must now ask the Court to spend its limited judicial resources addressing the inapposite and incorrect arguments that the Distributor Defendants continue to assert in their "renewed" motion. To be sure, the Distributor Defendants have slightly improved their approach in the Renewed Motion, by, for example, now acknowledging the existence of and incorporating critical contract language that they previously concealed from the Court by omitting it from their original motion. However, Defendants are continuing to try to have it both ways—seeking to enforce the Agreement's dispute resolution provisions while simultaneously ignoring their express terms. The Court has already rejected Defendants' attempts to do this twice before, holding that the Agreement unequivocally exempts It Works!' request for injunctive relief from the arbitration requirement. Because the Agreement's exception to arbitration applies equally to It Works!' (now amended) claims for injunctive relief, and because this Court has the authority to decide arbitrability, the Court should deny Defendants' Motion.

## II.    BACKGROUND

It Works! is a network marketing company that sells various health and beauty products through independent distributors. It Works!' success is driven by these distributors, who earn commissions on their sales and on the sales of the distributors they supervise (their "downlines").

Since its founding in 2001, It Works! and its distributors have built a successful business with millions of dollars in annual sales.

To equip its distributors to succeed, It Works! provides them with confidential and trade secret information, including It Works!' Downline Activity Reports and eSuite, which contain information about the identities, sales activity, income, and productivity of It Works! distributors, as well as information about It Works!' products, customers, and finances. In return, It Works!' distributors are required to comply with the It Works! Distributor Agreement (Terms & Conditions), the It Works! Policies and Procedures, and the It Works! Compensation Plan (collectively, the "Agreement"), which include provisions designed to protect It Works!' confidential information and trade secrets. Specifically, all It Works! distributors agree that It Works!' Downline Activity Reports and eSuite constitute confidential and trade secret information and that the distributors will not, among other things, "[d]irectly or indirectly use or disclose any information contained in any Downline Activity Report or in eSuite to any third party" or "[r]ecruit or solicit any Distributor or Customer listed on any Downline Activity Report or in eSuite." Dkt. 1-2, Policies and Procedures §§ 3.9.4, 3.34. It Works! distributors likewise agree that "[f]ollowing the cancellation of [their] Agreement, and for a period of six (6) calendar months thereafter, with the exception of a Distributor who was personally sponsored by the former Distributor, a former Distributor may not Recruit any It Works! Distributor or Customer for another network marketing business." *Id.* § 3.9.1.

The Agreement also contains provisions related to dispute resolution that anticipate It Works!' need to swiftly seek relief to protect its nondisclosure and non-solicitation rights under the Agreement. The relevant provisions in the Terms & Conditions are below:

> 13. This Agreement will be governed by and construed in accordance with the laws of the State of Florida without regard to principles of conflicts of laws. In the

event of a dispute between a Distributor and It Works! arising from or relating to the Agreement, or the rights and obligations of either party, the parties shall attempt in good faith to resolve the dispute through nonbinding mediation as more fully described in the Policies & Procedures. It Works! shall not be obligated to engage in mediation as a prerequisite to disciplinary action against a Distributor. If the parties are unsuccessful in resolving the dispute through mediation, the dispute and shall be settled totally and finally by confidential arbitration as more fully described in the Policies & Procedures.

14. **Notwithstanding the foregoing, either Party may bring an action before the courts seeking a restraining order, temporary or permanent injunction, or other equitable relief to protect its intellectual property rights, including but not limited to customer and/or Distributor lists as well as other trade secrets, trademarks, trade names, patents, and copyrights.** The parties may also seek judicial enforcement of an arbitration award. In all actions before the courts, the parties consent to exclusive jurisdiction and venue before the U.S. District Court for the Middle District of Florida, residing in Tampa, Florida or the state courts residing in Manatee County, State of Florida.

Dkt. 1-2, Terms & Conditions §§ 13–14 (emphasis added). In addition, the Policies and Procedures' dispute resolution provisions state:

> **8.3 - Mediation**
> For any dispute involving $10,000 or more, prior to instituting any arbitration as provided in Section 8.4 below, the parties shall meet in good faith and attempt to resolve any dispute arising from or relating to the Agreement through non-binding mediation. One individual who is mutually acceptable to the parties shall be appointed as mediator. The mediator's fees and costs, as well as the costs of holding and conducting the mediation, shall be divided equally between the parties. Each party shall pay its portion of the anticipated fees and costs at least 10 days in advance of the mediation. Each party shall pay its own attorney fees, costs, and individual expenses associated with conducting and attending the mediation. Mediation shall be held in Sarasota or Manatee County, Florida, and shall last no more than two business days.
>
> **8.4 - Arbitration**
> Except as otherwise provided in the Agreement, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled through confidential arbitration. The Parties waive rights to trial by jury or to any court. This arbitration provision applies to claims that were not successfully resolved through the foregoing mediation process as well as claims for less than $10,000 not subject to the mediation requirement. The arbitration shall be filed with, and administered by, the American Arbitration Association in accordance with the AAA's Commercial Arbitration Rules and Mediation Procedures, which are available on the AAA's website at www.adr.org. Copies of the AAA's Commercial

> Arbitration Rules and Mediation Procedures will also be emailed to Distributors upon request to It Works!' Customer Service Department. . . . .
>
> **Notwithstanding the foregoing, nothing in the Agreement shall prevent either party from applying to and obtaining from any court to which the Parties have consented to jurisdiction as set forth in the Agreement a temporary restraining order, preliminary or permanent injunction, or other equitable relief to safeguard and protect its intellectual property rights, trade secrets, and/or confidential information, including but not limited to enforcement of its rights under the non-solicitation provision of the Agreement.**

Dkt. 1-2, Policies and Procedures §§ 8.3–8.4 (emphasis added).

In or around July 2020, It Works! became aware that Melaleuca and certain former It Works! distributors—Kimberly Bertolucci, Katie Herold, Amber Hoerner, Kellie Kaufman, Jeanie McWhorter, Ashley Olive, Brandon Olive, Lea Piccoli, Sarah Rankin, Joshua Rankin, Makenzie Schultz, Steven Shultz, Geneveve Sykes, and Sean Sykes (collectively, the "Distributor Defendants")—were using and disclosing It Works!' confidential and trade secret information, including information obtained from Downline Activity Reports and eSuite, and unlawfully soliciting It Works! distributors to join Melaleuca. *See* Dkt. 1, 20, 41. It Works! immediately filed this lawsuit against Melaleuca and the Distributor Defendants, seeking preliminary and permanent injunctive relief to prevent the Defendants from violating their Agreements and making unauthorized use and disclosure of It Works!' confidential information and trade secrets, among other claims. Dkt. 1. It Works! sought a temporary restraining order, which the Court denied, and expedited discovery related to the unlawful activities of the Defendants, which the Court granted. Dkt. 20, 25, 41, 87.

On August 19, 2020, the Distributor Defendants filed their original motion to stay (which Defendant Melaleuca, Inc. joined in and adopted). Dkt. 73 at 15 n.2, 80. Two days later, the Court summarily denied their request to stay the case and compel arbitration to the extent it applied to It Works!' request for a preliminary injunction under Count I of the Complaint, recognizing that "the

agreement expressly excludes from arbitration claims seeking injunctive relief to protect trade secrets, confidential information, and enforcement of the non-solicitation provision of the contract." Dkt. 87, at 2–3.  Defendants filed an interlocutory appeal of that decision (*see* Dkt. 98), but the Court's September 2 denial of Defendants' Motion for Stay Pending Appeal (Dkt. 108) confirms what It Works! previously explained (*see* Dkt. 100)—Defendants' appeal is frivolous.

It Works! amended its complaint on September 1, and now asserts only claims for injunctive relief against the Distributor Defendants, as well as claims for injunctive relief and damages against Melaleuca.  *See* Dkt. 107.  However, despite the Agreement's plain language exempting injunctive relief claims from arbitration and this Court's two rulings enforcing that exemption, Defendants have even stated in their Motion to Stay Appeal filed with the Eleventh Circuit, that they intend to appeal this Court's denial of this Renewed Motion.

### III.   LEGAL STANDARD

"[A]rbitration is a matter of contract," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), and the Court can only compel arbitration when the parties have agreed to arbitrate their dispute. *Chastain v. Robinson–Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992).  "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms."  *Concepcion*, 563 U.S. at 339.  For agreements that fall within the scope of the Federal Arbitration Act (FAA), "state law generally governs whether an enforceable contract or agreement to arbitrate exists."  *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).  The party resisting arbitration bears the burden of showing that the claims at issue are not subject to arbitration.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## IV. ARGUMENT

### A. The Agreement Expressly Exempts Each of It Works!' Claims Against the Distributor Defendants from Arbitration.

When the Court denied their original motion to stay with respect to It Works!' request for a preliminary injunction, the Defendants filed a frivolous interlocutory appeal (*see* Dkt. 98) and motion for stay pending appeal (Dkt. 99) to cause further delays and deprive It Works! of the benefit of the Agreement's non-solicitation provisions before they expire. As established by this Court's denial of Defendants' Motion for Stay Pending Appeal (Dkt. 108), Defendants' appeal was frivolous. However, once again, the Defendants are asserting the same arguments, despite the fact that the Agreement's specific terms carve injunctive relief claims out of the arbitration requirement. For the same reason, the remaining claims for injunctive relief in It Works!' Amended Complaint are exempt from arbitration.

Indeed, both the Terms & Conditions and Policies and Procedures in the Agreement contain express language permitting It Works! to pursue claims for injunctive relief—temporary or permanent—in court. The Terms & Conditions specify that:

> Notwithstanding the foregoing [dispute resolution provision], **either Party may bring an action <u>before the courts</u> seeking a restraining order, <u>temporary or permanent injunction</u>, or other equitable relief to protect its intellectual property rights, <u>including but not limited to customer and/or Distributor lists as well as other trade secrets</u>**, trademarks, trade names, patents, and copyrights.

Dkt. 1-2, Terms & Conditions § 14 (emphasis added). Likewise, the Policies and Procedures stipulate:

> Notwithstanding the foregoing [dispute resolution provisions], **nothing in the Agreement shall prevent either party from applying to and obtaining <u>from any court</u>** to which the Parties have consented to jurisdiction as set forth in the Agreement **a temporary restraining order, <u>preliminary or permanent injunction</u>, or other equitable relief to safeguard and protect its intellectual property rights, <u>trade secrets, and/or confidential information, including but not limited to enforcement of its rights under the non-solicitation provision of the Agreement</u>.**

Dkt. 1-2, Policies and Procedures § 8.4 (emphasis added). The Distributor Defendants cannot reasonably dispute that the claims for injunctive relief in It Works!' Amended Complaint fit within these exceptions authorizing litigation.

Indeed, instead of looking at the language in the 179 allegations of the forty-three page Amended Complaint, the Distributor Defendants wholly ignore it, and state that the Amended Complaint contains a "single conclusory allegation" about the protection of It Works! confidential and trade secret information. Dkt. 119, p. 2. However, It Works! actually alleges the following with respect to each claim against the Distributor Defendants:

| Claim for Injunctive Relief | Supporting Allegations |
|---|---|
| **Count I** – Breach of the Agreement (Against the Distributor Defendants) | • ¶ 111: "The Distributor Defendants have breached their Agreements **by using It Works! confidential information and trade secrets, including information contained in Downline Activity Reports and eSuite**, to sell, or attempt to sell, Melaleuca's competing network marketing programs, products and services."<br><br>• ¶ 112: "**The non-solicitation provisions in the Agreement protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information.**"<br><br>• ¶ 115: "In performing these unlawful acts, the Distributor Defendants have also breached their Agreements **by making inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential Information, including Downline Activity Reports and eSuite information** . . . .":<br>(a) to third parties, including Melaleuca;<br>(b) to compete with It Works! . . . ;<br>(c) **to recruit and solicit It Works! distributors and customers—including those listed on Downline Activity Reports or in eSuite**; and<br>(d) to influence or induce, or attempt to influence or induce, It Works! distributors and customers to alter (indeed, to terminate) their business relationships with It Works!."<br><br>• ¶ 123: "In light of the foregoing, the provisions of the Agreement which It Works! seeks to enforce are reasonably necessary **to protect It Works!' intellectual property rights,** |

| | |
|---|---|
| | including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information." |
| | • p. 29–30: "WHEREFORE**, to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information**, Plaintiff, It Works! Marketing, Inc., demands judgment against [the Distributor Defendants]:<br>(a) preliminarily and permanently enjoining the Distributor Defendants . . . ." |
| **Count IV** – Violation of the Defend Trade Secrets Act (Against All Defendants) | • ¶ 156: "The Distributor Defendants and Melaleuca **made unauthorized disclosure and use of the Confidential Information** by selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services." |
| | • ¶ 157: "**The misuse and unauthorized disclosure of It Works Confidential Information is ongoing, and by soliciting It Works! distributors** and customers for Melaleuca's competing network marketing programs, products and services, the Distributor Defendants and Melaleuca have and will continue to **misappropriate It Works!' trade secret information by, among other things, making inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential Information, including Downline Activity Reports and eSuite information**, including to Melaleuca." |
| | • ¶ 158: "The Distributor Defendants and Melaleuca know or have reason to know that **It Works!' trade secret information was improperly obtained for the purposes of** selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services, and **soliciting It Works! distributors** and customers for Melaleuca's competing network marketing programs, products and services." |
| | • ¶ 162: "Entry of an injunction is necessary **to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information**." |
| | • p. 37: "WHEREFORE, **to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information**, Plaintiff, It Works Marketing, Inc., demands judgment against [the Distributor Defendants]:<br>(a) preliminarily and permanently enjoining the Distributor Defendants . . . ." |

| Count V – Violation of the Florida Uniform Trade Secrets Act (Against All Defendants) | <ul><li>¶ 171: "The Distributor Defendants and Melaleuca **made unauthorized disclosure and use of the Confidential Information** by selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services."</li><li>¶ 172: "**The misuse and unauthorized disclosure of It Works! Confidential Information is ongoing, and by soliciting It Works! distributors** and customers for Melaleuca's competing network marketing programs, products and services, the Distributor Defendants and Melaleuca have and will continue to **misappropriate It Works!' trade secret information by, among other things, making inevitable and unauthorized use, disclosures and transfers of It Works!' Confidential Information, including Downline Activity Reports and eSuite information**, including to Melaleuca."</li><li>¶ 173: "The Distributor Defendants and Melaleuca know or have reason to know that **It Works!' trade secret information was improperly obtained for the purposes of** selling, or attempting to sell, Melaleuca's competing network marketing programs, products and services, and **soliciting It Works! distributors** and customers for Melaleuca's competing network marketing programs, products and services."</li><li>¶ 177: "Entry of an injunction is necessary **to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information**."</li><li>p. 40: "WHEREFORE, **to protect It Works!' intellectual property rights, including but not limited to its customer and/or distributor lists, trade secrets, and other confidential information**, Plaintiff, It Works Marketing, Inc., demands judgment against [the Distributor Defendants]:<br>(a) preliminarily and permanently enjoining the Distributor Defendants . . . ."</li></ul> |

In concluding that It Works!' request for preliminary injunctive relief was not arbitrable, and then in denying Defendants' request that this Court stay these proceedings while they pursued their frivolous appeal, this Court already held—and then confirmed—that the subject matter of Count I is within the scope of the Agreement's exclusionary language. *See* Dkt. 87, at 2–3; Dkt. 108. Because the above allegations demonstrate that It Works! likewise seeks injunctive relief "to

protect trade secrets, confidential information, and enforcement of the non-solicitation provision of the contract" in the remaining Counts against the Distributor Defendants, It Works!' remaining injunctive relief claims are also exempt from arbitration. *See id.*

Defendants previously contended that because the carve-out language relating to the Agreement's non-solicitation provision appears only in the Policies and Procedures, the exception permitting court enforcement of the non-solicitation provision is somehow invalid. *See also* Dkt. 99, at 7 (quoting Dkt. 1-2, Terms & Conditions § 12). However, they have now changed course and concede that "the Agreement acknowledges that protection of intellectual property rights may sometimes implicate the Agreement's non-solicitation provision[.]" Dkt. 119, at 6.

Despite this concession, the Distributor Defendants are continuing to try to avoid the language of the Agreement by now arguing that the "true thrust" of It Works! claims is "a pure non-solicitation claim – *i.e.*, it is not asserted for the protection of confidential information." Dkt. 119, at 7. The Distributor Defendants assert that "It Works may only seek an injunction from this Court involving the non-solicitation provision (and thereby avoid its broad arbitration obligations) if such injunction is necessary to 'safeguard and protect its intellectual property rights.'" *Id*.

To avoid the obvious conclusion that It Works!' Amended Complaint is consistent with the arbitration carve-out in the Agreement, the Distributor Defendants state that, "none of the specific allegations regarding the claimed solicitation involve—or even suggest—any use of confidential information." Dkt. 119, p. 9. This statement is remarkable in light of the fifteen (15) specific statements concerning the protection of It Works! confidential information from the Amended Complaint that are quoted above. Apparently, the Distributor Defendants believe that It Works! must put forth the specific proof of the Distributor Defendants' use of It Works!'s confidential information in the Amended Complaint. While It Works! is prepared to present

evidence of the use of its confidential information by the Distributor Defendants, an Amended Complaint is not the appropriate forum for It Works! to do so. In short, the face of the Amended Complaint demonstrates that It Works! has made it unmistakably clear that it is seeking injunctive relief[1] to protect its confidential information.

In support of their position that the "true thrust" of the Amended Complaint is not an attempt by It Works! to protect its confidential information, the Distributor Defendants rely upon *Ivax Corp. v. B. Braun Am. Inc.*, 286 F.3d 1309, 1322 (11th Cir. 2002). *Ivax* involved a situation wherein the Plaintiff sought to characterize its claims as a "failure to maintain its books and records properly" when it was actually a claim for failure to make certain payments that the plaintiff was owed. In arriving at this conclusion, the Court looked at the face of the complaint, and the relief sought therein, to determine that this was a claim related to specific non-payments. Here, the face of the Amended Complaint, and the relief sought therein, clearly demonstrate that, consistent with the carve-out within the arbitration clause of the Agreement, It Works! is seeking injunctive relief to protect its confidential information.

Remarkably, in support for their position that the non-solicitation provision is not being used to protect confidential information here, the Distributor Defendants point out that, under Florida law, "[n]on-solicitation agreements have many purposes, only one of which is the protection of confidential information." Dkt. 119, at 7. However, this ignores that the Distributor Defendants' non-solicitation obligations in the Agreement arise out of the Agreement's protections surrounding It Works!' confidential information and trade secrets—specifically, its Downline Activity Reports and eSuite, which identify It Works! distributors and customers. See Dkt. 1-2,

---

[1] The Distributor Defendants try to avoid the fact that It Works! is only seeking injunctive relief against them by pointing to standard language concluding the "wherefore clause" of Count I of the Amended Complaint stating that It Works! seeks "all other relief to which It Works! is entitled at law or in equity." Dkt. 107, at 30. However, it is clear from the face of the Complaint that It Works! only seeks injunctive relief against the Distributor Defendants.

Policies and Procedures § 3.9.4. It Works!' request for injunctive relief to prevent Defendants from soliciting It Works! distributors is therefore a request "to protect its intellectual property rights, including but not limited to customer and/or Distributor lists," which is expressly permitted by the injunctive relief carve-out in the Terms & Conditions (and the carve-out in the Policies and Procedures). Dkt. 1-2, Terms & Conditions § 14; *id.* Policies and Procedures § 8.4. Clearly, It Works! is seeking injunctive relief to enforce its non-solicitation provision in order to protect its confidential information, which is wholly and completely consistent with Florida law.[2]

In sum, the Distributor Defendants have not—and cannot—articulate any basis upon which to compel arbitration of It Works!' injunctive relief claims against them in the Amended Complaint. Instead, this Court's previous rulings with respect to It Works!' request for injunctive relief compels the opposite conclusion: It Works! can pursue those claims against the Distributor Defendants in this Court.

### B. Whether It Works!' Claims Are Arbitrable Was Properly Decided by the Court.

This Court already rejected the Distributor Defendants' delegation argument when it decided—twice—that It Works!' request for injunctive relief is not arbitrable. The Court was correct to do so. Because the Agreement does not clearly and unmistakably evidence the parties' intent to submit questions of arbitrability to the arbitrator, whether It Works!' claims are exempt from arbitration is a question for the Court.

---

[2] Florida courts have recognized that post-employment non-solicitation provisions like the ones in the Agreement protect a company's legitimate business interests in its confidential information and trade secrets. *E.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dunn*, 191 F. Supp. 2d 1346, 1351 (M.D. Fla. 2002) ("[T]he Court finds that the non-solicitation and non-disclosure agreements were reasonably necessary to protect Plaintiff's legitimate business interest in its confidential customer lists and the information contained therein, which the Court has previously deemed to be trade secrets."); *Freedom Med., Inc. v. Sewpersaud*, 2020 WL 3443837, at *4 (M.D. Fla. June 23, 2020) (considering defendant's solicitation efforts in determination of whether defendant misappropriated trade secrets); *Confianca Moving, Inc. v. De Oliveira*, 2011 WL 13269500, at *5 (S.D. Fla. Jan. 24, 2011) (same); *see also* Dkt. 1-2 Terms & Conditions § 13 (stating that Florida law governs the Agreement). In other words, courts enforce non-solicitation provisions **because** they are necessary to protect a party's intellectual property, including its trade secrets and other confidential information.

Importantly, the Distributor Defendants are only raising their meritless delegation argument again so that when it is once again rejected by this Court, they can seek a stay pending appeal and further delay these proceedings. Given the clear language of the arbitration carve out in the Agreement, the Distributor Defendants cannot believe that this Court, or an arbitrator, would decide that It Works!' injunctive claims somehow are not subject to the arbitration exception. However, the Distributor Defendants are not seeking a ruling because they believe that they are correct. The Distributor Defendants only want a ruling on this delegation issue so that they can seek a stay pending appeal and delay injunctive relief, causing It Works! to be deprived of the benefit of its bargain.

When it comes to delegation, "the usual presumption—that any doubts concerning arbitration should be resolved in favor of arbitration—is reversed." *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1299 (M.D. Fla. 2018). As a result, the question of arbitrability is for the Court to decide "*unless* there is clear and unmistakable evidence that the parties intended to submit such questions to an arbitrator." *JPay, Inc. v. Kobel*, 904 F.3d 923, 930 (11th Cir. 2018). Defendants contend that the parties expressed a "clear and unmistakable" intent by referencing the rules of the American Arbitration Association (AAA) in the Agreement. *See* Dkt. 1-2, Policies and Procedures § 8.4; *JPay*, 904 F.3d at 936 (noting that reference to the AAA rules generally constitutes a delegation of arbitrability questions to the arbitrator). Here, however, the mention of the AAA rules is not dispositive because other terms in the Agreement and Florida law countenance against delegation.

The Agreement twice explains that "[n]otwithstanding" the dispute resolution provisions, either party may bring an action in court for injunctive relief to protect its intellectual property rights, trade secrets, confidential information, and non-solicitation obligations. Dkt. 1-2, Terms &

Conditions § 13; *id.* Policies and Procedures § 8.4. The language of these exceptions clearly requires that claims for "a restraining order, temporary or permanent injunction . . . to protect [a party's] intellectual property rights, including but not limited to customer and/or Distributor lists as well as other trade secrets," "and/or confidential information, including but not limited to enforcement of [the party's] rights under the non-solicitation provision of the Agreement" are exempt from arbitration. Dkt. 1-2, Terms & Conditions § 14; *id.* Policies and Procedures § 8.4. To the extent that the Agreement's general reference to the AAA rules could be read as inconsistent with this specific language in the Agreement, these specific provisions control. At the very least, the fact that these provisions unequivocally dictate that It Works!' claims can be brought in court prevents the Agreement's incorporation of the AAA rules from being the "clear and unmistakable evidence" required for a valid delegation

*See Verano Homeowners Ass'n, Inc. v. Beazer Homes Corp.*, 2020 WL 3052278, at *4 (M.D. Fla. Feb. 6, 2020) ("[T]he 'carve-out clause'—excepting actions seeking injunctive relief—did not incorporate the AAA rules; therefore, the parties did not clearly and unmistakably agree to arbitrate the arbitrability of those types of actions." (discussing *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 280–82 (5th Cir. 2019))); *see also Archer & White*, 935 F.3d at 279–82 ("Given that carve-out, we cannot say that the Dealer Agreement evinces a 'clear and unmistakable' intent to delegate arbitrability."). Here, as in *Archer & White*, the Agreement's carve-out clauses do not incorporate the AAA rules and, as a result, there is no delegation to an arbitrator of questions of arbitrability of injunctive relief claims. For this additional reason, the Court properly rejected the Distributor Defendants' delegation argument each time it has decided that It Works! can bring its injunctive relief claims in this action.

Delegation is likewise inappropriate because, as this Court has explained, whether a contract's provisions delegate arbitrability to the arbitrator is determined by reference to "the relevant state law." *Temple*, 360 F. Supp. 3d at 1299. Thus, where the governing state law provides that "simple reference to the [AAA] rules is insufficient to constitute 'clear and unmistakable' language evincing an intent to have an arbitrator decide arbitrability" under certain circumstances, this Court has declined to delegate the arbitrability issue based on mention of the AAA rules alone. *Id.* at 1299, 1302. Here, Florida law is unsettled as to whether a mere reference to the AAA rules constitutes a valid delegation of the arbitrability question to the arbitrator, with at least one court of appeals squarely holding that a "broad, nonspecific, and cursory" reference to the AAA rules without specifying any particular provision or rule is insufficient. *Doe v. Natt*, --- So. 3d ----, 2020 WL 1486926, at *7 (Fla. 2d DCA Mar. 25, 2020). *But see Reunion W. Dev. Partners, LLLP v. Guimaraes*, 221 So. 3d 1278, 1280 (Fla. 5th DCA 2017) (concluding that a general reference to the AAA rules was a valid delegation *where there was no carve-out for injunctive relief or otherwise*). This is yet another reason why the Agreement's "broad, nonspecific" incorporation of the AAA rules is hardly a "clear and unmistakable" delegation to the arbitrator.

Contrary to Defendants' arguments, and consistent with the Court's prior rulings that It Works!' request for injunctive relief is exempt from the Agreement's dispute resolution provisions, the authority to determine whether It Works!' claims are arbitrable rests squarely with—and has already been properly decided by—this Court.

## V. CONCLUSION

For the reasons described, It Works! respectfully requests that the Court deny the Distributor Defendants' Joint Renewed Motion to Compel Mediation and Arbitration (Dkt. 119) in its entirety and permit each of It Works!' claims to proceed in this Court.

Dated: September 29, 2020

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ John C.C. Sanders, Jr.*
John C.C. Sanders, Jr.
Texas Bar No. 24057036
jsanders@winston.com
Katrina G. Eash
Texas Bar No. 24074636
Keash@winston.com
Hayden Duffy
Texas Bar No. 24097975
Hduffy@winston.com
John Sullivan
Texas Bar No. 24098485
jsullivan@winston.com
Rachel Koehn
Texas Bar No. 24110102
rkoehn@winston.com
2121 N. Pearl St., Suite 900
Dallas, Texas 75201
Telephone: 214-453-6500
Telecopy: 214-453-6400

*/s/ Ernest J. Marquart*
Ernest J. Marquart, Florida Bar No. 905860
Jeffrey B. Fabian, Florida Bar No. 85868
SHUMAKER, LOOP & KENDRICK, LLP
101 East Kennedy Blvd.
Suite 2800
Tampa, Florida 33602
Telephone: (813) 229-7600
Facsimile: (813) 229-1660
emarquart@shumaker.com (Primary e-mail)
mdesilles@shumaker.com (Secondary e-mail)
jfabian@shumaker.com (Primary e-mail)
ldyer@shumaker.com (Secondary e-mail)

***ATTORNEYS FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

I certify that on September 29, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ John C.C. Sanders, Jr.*
John C.C. Sanders, Jr.
